## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**DAVID B. HOFF**, an individual,

     Plaintiff,

v.

**AMENDED AND RESTATED ANADARKO PETROLEUM CORPORATION CHANGE OF CONTROL SEVERANCE PLAN,** an ERISA employee benefit plan, and

**ANADARKO PETROLEUM CORPORATION HEALTH AND WELFARE BENEFITS ADMINISTRATIVE COMMITTEE,** as Plan Administrator and fiduciary,

     Defendants.

---

## COMPLAINT

---

     Plaintiff, David B. Hoff ("Plaintiff" or "Mr. Hoff"), by and through his attorneys, hereby submits his Complaint against Defendants, the Amended and Restated Anadarko Petroleum Corporation Change of Control Severance Plan (together with additional amendments, the "Plan") and the Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, as Plan Administrator ("Plan Administrator").  In support of his Complaint, Plaintiff alleges the following.

### <u>JURISDICTION AND VENUE</u>

     1.     Plaintiff is, and was at all relevant times, a resident of the State of Colorado, residing at 32320 Robinson Hill Road, Golden, Colorado 80403.

2.      Defendants, the Amended and Restated Anadarko Petroleum Corporation Change of Control Severance Plan, and the Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, as Plan Administrator, are and/or represent a plan arising under the Employee Retirement Income Security Act of 1974 (ERISA) which is capable of being sued under ERISA §502(d).  See 29 U.S.C. §1132(d).

3.      This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132(e) and (f).

4.      Jurisdiction of the Court is based upon ERISA; and in particular, 29 U.S.C. §1132(e)(1) and 1132(f), and 28 U.S.C. §1331.  Those provisions give United States District Courts jurisdiction to hear civil actions brought to recover benefits and sue for damages under the terms of an employee welfare benefit plan.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) & (b) and 29 U.S.C. §1132(e)(2) given that the Plan governs employees in this district, is administered to participants in this district, fiduciary duties are owed to participants in this district, and the breaches of the Plan and of the duties owed to Plaintiff took place in this district.

**PARTIES**

6.      The Amended and Restated Anadarko Petroleum Corporation Change of Control Severance Plan is an employee benefit plan within the meaning of Section 3(1) of ERISA, 29 U.S.C. §1002(1), effective September 1, 2007.

7.      The Amended and Restated Anadarko Petroleum Corporation Change of Control Severance Plan was amended with a First Amendment adopted on April 15, 2008, a Second

Amendment adopted on October 26, 2009, and a Third Amendment adopted on December 20, 2010 (together, the "Plan").  A true and correct copy of the Plan is attached hereto as **Exhibit 1**.

8.      The Plan Administrator is the Plan's named fiduciary and administrator of the Plan.  The Plan Administrator's address is General Counsel, Anadarko Petroleum Corporation, P.O. Box 1330, 1201 Lake Robbins Drive, The Woodlands, Texas 77380-1330.

9.      The Plan Administrator is a fiduciary of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

10.     Plaintiff was Project Manager, Plants and Major Projects, for Anadarko Petroleum Corporation d/b/a Western Midstream Partners, LP ("Anadarko"), prior to its acquisition by Occidental Petroleum Corporation ("Oxy") on or about August 8, 2019 ("Change in Control").

11.     With the Change in Control, Oxy gained control of substantially all of Anadarko's Western Midstream assets, and became Plaintiff's employer.

12.     As an employee of Anadarko prior to the Change in Control, Plaintiff was a "Participant" of the Plan, as defined in Section 3.1 of the Plan.

13.     As such, Plaintiff was a beneficiary of the Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. §1002(8).

<u>**EXHAUSTION OF ADMINISTRATIVE CLAIMS PROCEDURES**</u>

14.     After Plaintiff's entitlement to Separation Benefits attached, Plaintiff participated and exhausted the administration and claims procedures required under the Plan to obtain his Separation Benefits.  <u>See</u> Exhibit 1, Art. II(aa), Art. IV, and §§ 9.2 and 9.3.

15.     Plaintiff completed the necessary claims procedures in Sections 9.2 and 9.3 of the Plan and thereby satisfied all conditions precedent to the commencement of this action.

16.     Plaintiff's claim for Separation Benefits under the Plan was timely made pursuant to Article IX, Section 9.2 of the Plan on July 27, 2020.

17.     Plaintiff's claim for Separation Benefits was denied by the Plan Administrator on January 24, 2021, one day after the latest deadline for decision of January 23, 2021 had expired.

18.     Plaintiff timely filed his appeal of the Plan Administrator's denial of Separation Benefits on March 11, 2021.

19.     Plaintiff received a final decision denying his appeal for Separation Benefits on July 9, 2021, and was notified by the Plan Administrator that he may file a lawsuit no later than one year after the date of the final decision.

20.     Plaintiff has timely commenced this action.

## GENERAL ALLEGATIONS

21.     Plaintiff incorporates by reference all allegations set forth above, as if fully set forth herein.

### *Change in Control*

22.     On August 8, 2019, Oxy acquired Anadarko pursuant to a merger agreement by and among Anadarko, Oxy and a subsidiary of Oxy, which acquisition constituted a Change of Control under the Plan.

### *Good Reason Event – Material and Adverse Diminishment of Duties and Responsibilities*

23.     At all relevant times, Plaintiff was a Participant under the Plan.  See Exhibit 1, Article II (o), (q), (r), (u), §3.1, and Art. V.

24.     Under the Plan, Participants may resign their employment within 90 days of a "Good Reason" event if the event occurs before August 8, 2020 (the first anniversary of the date

of the Change of Control), and receive Separation Benefits from the Plan.  See Exhibit 1, Article II(c).

25.     Pursuant to Article II(s)(i) of the Plan, a Good Reason event occurs when "[a] Participant's duties and responsibilities as an Employee are materially and adversely diminished in comparison to the duties and responsibilities enjoyed by the Participant immediately prior to the Change of Control."  See Exhibit 1, Art. II(s).

26.     Notably, under the Plan's language, the material and adverse diminishment does not have be as a result of the Change in Control, and there is nothing in the Plan that exempts a temporary or economic-based diminishment from constituting Good Reason.  See Exhibit 1, Art. II(s).

27.     Just prior to the Change in Control, and until March 9, 2020 when Plaintiff's duties and responsibilities were materially and adversely diminished, Plaintiff was Project Manager for the Latham Gas Plant Project.

28.     The Latham Gas Plant Project was the largest project in the Major Projects Group at the time, had a $450 Million combined budget, and required leading and coordinating all aspects, scheduling, scope, and management of a team of over 300 people.

29.     Prior to his promotion to the Plants and Major Projects Division, Plaintiff had been recognized in his 2015 Performance Review for "continu[ing] to grow as a leader" and "easily taking on increasing levels of responsibility."

30.     Eight months later in October 2016, Plaintiff was promoted to the Plants and Major Projects Division.  His supervisor was Jay Allin ("Mr. Allin"), Director of the Plants and Major Projects Division.

31.     From that time until the Good Reason event, Plaintiff was assigned to manage projects that steadily increased in size and scope, even being lauded by Mr. Allin, in his 2017 Performance Review for "tak[ing] on the highest profile projects and execut[ing] them exceptionally."

32.     After that review, Plaintiff's duties and responsibilities continued to materially increase and he was eventually given the responsibility over the Latham Gas Plant Project.

33.     Plaintiff first experienced a Good Reason event on or around March 9, 2020.  On that date, Plaintiff was newly assigned to manage two small projects: (1) the Wattenberg Engine Overhaul; and (2) the Ramsey Slug Catcher Project.

34.     Additionally, in April 2020, he was assigned to provide engineering support to the Mechanical Integrity ("MI") team by answering engineering questions for service evaluations and making other supporting calculations - a role with no management duties or responsibilities.

35.     These changes to Plaintiff's work and new assignments materially and adversely diminished the duties and responsibilities Plaintiff held just prior to the Change in Control ("Good Reason Event").

36.     On or about June 4, 2020, when Plaintiff did not have any major projects in his pipeline and was not being assigned any increased duties and responsibilities which were comparable to those he had before the Change in Control, Plaintiff resigned for Good Reason under the Plan.

37.     To be eligible for Separation Benefits under the Plan, Plaintiff's resignation for Good Reason was required to be within 90 days of the Good Reason Event.  See Exhibit 1,

Article II(c).  Plaintiff resigned for Good Reason on the 87th day following the first Good Reason Event.

### *Material and Adverse Diminishment in Budget Size*

38.     With the Good Reason Event, Plaintiff went from running the $450 Million project to being assigned to run two substantially smaller projects with a combined budget of $3.1 Million (Ramsey Slug Catcher Project budget: $600,000; Wattenberg Engine Overhaul budget: $2.5 Million).

39.     Further, during the several weeks after the Good Reason Event, additional indicators that Plaintiff's duties and responsibilities would continue to be materially and adversely diminished for the foreseeable future occurred.

40.     Specifically, toward the end of April 2020, Plaintiff was volunteered by his supervisor, Mr. Allin, and Michael Forsyth, VP of Engineering, to join the MI team to assist with answering engineering questions for service evaluations and making other supporting calculations.

41.     The role that Plaintiff was formally introduced into by the MI Supervisor to the team on April 30, 2020, would have been a sole contributor role, with no management (neither project management nor direct report management) responsibility.

42.     Additionally, just before Plaintiff resigned for Good Reason on June 4, 2020, the Wattenberg Engine Overhaul project he had been assigned was deferred to 2021.

43.     Accordingly, at the time of his resignation for Good Reason, Plaintiff's duties and responsibilities had materially and adversely diminished from running a total project budget as

Project Manager of $450 Million, to running a total project budget of $600,000, and to providing engineering support to the MI team for service evaluations in a sole contributor role.

44.     After the Good Reason Event, Plaintiff was responsible for budgeted projects equaling less than 0.15% of what he was responsible for just prior to the Change in Control.

45.     This effective elimination of Plaintiff's entire budget constituted a material and adverse diminishment in his duties and responsibilities.

46.     Importantly, to constitute Good Reason under the Plan, a change in title is not required.  See Plan, at Art. II(s).

47.     Under the plain language of the Plan, it is of no relevance or legal consequence that Plaintiff remained as a "Project Manager" when analyzing whether his duties and responsibilities were materially and adversely diminished after March 9, 2020.

48.     Defendants arbitrarily and capriciously used Plaintiff's lack of title change to deny Plaintiff's claim for Separation Benefits.  The Defendants' denial of Separation Benefits to Plaintiff based on this irrelevant consideration constitutes an abuse of discretion, a breach of fiduciary duty, and is a violation of Plaintiff's rights, contractual and equitable, under all the circumstances.

49.     When Plaintiff's assigned projects went from the largest projects in the Plants and Major Projects Division to projects that would not even qualify as projects assigned to the Major Projects Division just prior to the Change in Control, his duties and responsibilities were objectively and visibly materially and adversely diminished.  That he was still titled "Project Manager" is of no legal consequence under the Plan.

50.     Further, Plaintiff does not argue that he was either guaranteed or promised specific size projects as a Project Manager.

51.     Defendants, however, denied Plaintiff's claim for Separation Benefits and his appeal based in part on the fact that he was not guaranteed or promised specific size projects as a Project Manager.

52.     Under the plain language of the Plan, it is of no relevance or legal consequence that Plaintiff was not guaranteed or promised specific size projects.

53.     Importantly, nowhere does the Plan require an employee to have first received a guarantee or promise of certain duties and responsibilities in order to have those duties and responsibilities materially and adversely diminished.  See Plan, at Art. II(s)(i).

54.     Defendants arbitrarily and capriciously used the absence of a guarantee or promise for specific size projects to deny Plaintiff's claim for Separation Benefits.  The Defendants' denial of Separation Benefits to Plaintiff based on this irrelevant consideration constitutes an abuse of discretion, a breach of fiduciary duty, and is a violation of Plaintiff's rights, contractual and equitable, under all the circumstances.

### _Material and Adverse Diminishment in Professional Responsibilities, Experience Level Requirements, Marketability, and Growth_

55.     Plaintiff's material and adverse diminishment in duties and responsibilities is further illustrated by comparing the minimum experience necessary to act as Project Manager for the project assigned to Plaintiff just before the Change in Control, and the minimum experience necessary to act as Project Manager for the work assigned to Plaintiff after the Good Reason Event on March 9, 2020.

56.     According to Mr. Allin, Director of the Plants and Major Projects Division, the minimum experience required to be Project Manager for the Ramsey Slug Catcher Project was 1-2 years of engineer experience.

57.     In contrast, in order to be Project Manager for the Latham Gas Plant Project, the minimum required experience necessary was at least 10 years of engineer experience and prior diverse project management experience (including Plaintiff's experience with managing compressors stations and pipelines and the construction portion of a train at the Ramsey Gas Plant).

58.     Further, according to Mr. Allin, on a full plant project like the Latham Gas Plant, Plaintiff gained valuable project management experience which is marketable in the industry.

59.     Mr. Allin stated that such experience may be used to command higher-level positions, greater responsibilities and decision-making roles, and higher compensation.

60.     Mr. Allin further stated that the level of experience gained from running the Latham Gas Plant Project as the Project Manager could justify future promotions and raises, and increase Plaintiff's professional reputation and marketable experience level.

61.     In managing projects like the Wattenberg Engine Overhaul and the Ramsey Slug Catcher, however, Plaintiff's experience-level was not required, and his marketability as a Project Manager was diminished by the smaller sizes, smaller budgets, and smaller scopes of these projects.

62.     Indeed, going from Project Manager of the Latham Gas Plant Project to Project Manager of the Ramsey Slug Catcher project created a material and adverse diminishment in

Plaintiff's job responsibilities and job duties, and viewed objectively by comparing project to project, constituted a clear demotion in job responsibilities.

63.     Additionally, after the Good Reason Event, Oxy did not provide Mr. Hoff with any major projects to manage, and failed to provide work that utilized, enhanced, and increased his experience-level, management duties, and decision-making responsibilities, including the nonmonetary material advantages of running and managing major projects with budgets in the multiple hundred-million-dollar levels.

64.     Further, when he was assigned to join the MI team in April 2020 to assist with answering engineering questions for service evaluations and making other supporting calculations, Plaintiff's Project Manager role was effectively set aside.

65.     At that point, he was no longer getting new Project Manager assignments, nor did he hold any comparable duties or responsibilities to the duties and responsibilities he held just prior to the Change in Control.

66.     The lesser experience level requirements, and decreased marketability and growth opportunities for Plaintiff as a result of being assigned these significantly smaller projects and a new supporting engineering role, establishes that the reduction in size and scope of Plaintiff's managed projects and assigned work was unquestionably material and adverse, and therefore constituted Good Reason under Art. II(s)(i) of the Plan.

### *Material and Adverse Diminishment in Supervisory Duties and Responsibilities*

67.     According to Mr. Allin, prior to the Change in Control, Plaintiff's management responsibilities were over a team of approximately 300 construction contractors, 20 engineers, and 10-15 construction inspectors.

68.     After the Good Reason Event, Plaintiff's management responsibilities were over teams of 10-20 construction contractors, 1-2 engineers, and 1-2 construction inspectors.

69.     Further, Plaintiff's newly assigned role as an MI support engineer, which he commenced on April 30, 2020, was as a sole contributor, with no supervisory responsibility or direct reports at all.

70.     Plaintiff does not argue that he was either guaranteed or promised a certain number of direct reports or supervision over a particular number of people as a Project Manager. That is because the Plan does not require an employee to have first received a guarantee or promise of certain duties and responsibilities in order to have those duties and responsibilities materially and adversely diminished.  See Plan, at Art. II(s)(i).

71.     Defendants, however, denied Plaintiff's claim for Separation Benefits and his appeal based in part on the fact that he was not guaranteed or promised a certain number of direct reports or supervision over a particular number of people.

72.     Defendants arbitrarily and capriciously used the absence of a guarantee or promise for a certain level of management responsibilities to deny Plaintiff's claim for Separation Benefits.

73.     The Defendants' denial of Separation Benefits to Plaintiff based on this irrelevant consideration constitutes an abuse of discretion, a breach of fiduciary duty, and is a violation of Plaintiff's rights, contractual and equitable, under all the circumstances.

***Non-Temporary Nature of Material and Adverse Diminishments of Duties and Responsibilities***

74.     As of the date Plaintiff resigned his employment, Plaintiff had not been assigned to manage any other projects other than the Ramsey Slug Catcher Project and the Wattenberg

Engine Overhaul (which had been deferred to 2021 and was not guaranteed to be reassigned to Plaintiff in 2021).

75.     Despite not being a factor relevant to a Good Reason event as defined by the Plan, Plaintiff's diminishment in job duties by size and scope of projects he was assigned (as compared to the Latham Gas Plant Project) was not temporary and Defendants do not contend that any changes were temporary.

76.     When Plaintiff resigned for Good Reason under the Plan, there were no upcoming or foreseeable major projects in his pipeline and in fact, he had been given an entirely new role as support engineer for the MI team, which carried no Project Management duties or responsibilities with it at all.

***Additional Violations and Errors in Defendants' Denial of Plaintiff's Claim for Separation Benefits and Appeal***

77.     In denying Plaintiff's claim for Separation Benefits, Defendants failed to comply with the procedural requirements set out in the Plan.

78.     The Committee's decision on Plaintiff's claim for Separation Benefits was due on or before January 23, 2021 (180 days after Plaintiff's claim).

79.     Pursuant to Section 9.3(a) of the First Amendment to the Plan, "no extension will be permitted beyond 90 days after expiration of the initial 90-day period."

80.     The initial 90-day period expired on October 25, 2020, and the additional 90-day period expired on January 23, 2021.

81.     No decision was received by Mr. Hoff or his undersigned representative on or before January 23, 2021.

82. As described above, Defendants also failed to act in accordance with the documents and instruments governing the Plan by inserting terms into the definitions and Plan documents that are not there, are not supported by ambiguity in the Plan's language, and which introduce requirements to obtaining benefits that are not contemplated by the Plan.

83. As set forth above, Defendants arbitrarily and capriciously relied on Plaintiff's lack of title change and lack of guarantee or promise for certain size projects and certain levels of responsibilities (none of which are relevant to the definition of Good Reason under the Plan), to deny Plaintiff's claim for Separation Benefits.

84. Additionally, Defendants arbitrarily and capriciously based their denial of Plaintiff's Separation Benefits on their unsupported conclusion that the material and adverse diminishment of Plaintiff's duties was not *as a result of* the Change in Control.

85. There is nothing in the Plan, however, that requires the Change in Control to have caused the Good Reason event.  See Exhibit 1, Art. II(s)(i).

86. Further, nothing in the Plan exempts a temporary or economic-based diminishment from constituting Good Reason either.  See Exhibit 1, Art. II(s)(i).

87. Additionally, Defendants deny Plaintiff's claim for Separation Benefits by stating that Plaintiff's "belief" that his duties and responsibilities were materially and adversely diminished was not "reasonable."  Plaintiff's belief, whether unreasonable or not, is not a proper consideration by Defendants in determining Plaintiff's entitlement to Separation Benefits under the terms of the Plan.

88. Upon information and belief, Participants who were similarly situated to Plaintiff were granted benefits under the Plan.

89.     The Defendants' denial of Separation Benefits to Plaintiff based on irrelevant and arbitrary and capricious considerations constitute an abuse of discretion, a breach of fiduciary duty, and a violation of Plaintiff's rights, contractual and equitable, under all the circumstances.

90.     The Plan Administrator failed to comply with its fiduciary duties to Plaintiff under the Plan by, at a minimum:

a.      Failing to act in accordance with the instruments governing the Plan by controverting its plain meaning and introducing language in its denial of Separation Benefits that is not contemplated by the Plan;

b.      Failing to notify Plaintiff of its benefit determination on review with the timeframe required by the instruments governing the Plan;

c.      Acting in its own self-interest by refusing to consider evidence showing that the denial of Separation Benefits had been in error;

d.      Failing to correct its mistake in denying Plaintiff's Separation Benefits;

e.      In bad faith, forcing Plaintiff to file a civil action to obtain the relief that it should have provided without the need for this litigation.

91.     After the Good Reason Event on March 9, 2020, Plaintiff lost his opportunity to build and maintain his professional marketability because he no longer had any duties or responsibilities to manage large-scale projects with teams of 300-400 professionals and multiple hundred-million-dollar budgets.

92.     Under prevailing and instructive law, these types of lost opportunities and reductions constitute a material and adverse diminishment in duties and responsibilities regardless of whether there was also a change in pay, title, or grade.

93.     Based on the evidence and legal analysis submitted to Defendants establishing that Plaintiff had met the Plan's conditions for Separation Benefits, Plaintiff is entitled to his Separation Benefits, statutory penalties, pre-judgment interest, and attorneys' fees and costs.

94.     Plaintiff suffered a Good Reason Event, he resigned within 90 days of the Good Reason Event as required (on June 4, 2020), and he is therefore entitled to Separation Benefits under the Plan.

## FIRST CLAIM FOR RELIEF
**(Improper Denial of Benefits, ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B))**

95.     Plaintiff incorporates by reference all allegations set forth above, as if fully set forth herein.

96.     Defendants' denial of Separation Benefits is and has been in derogation of Plaintiff's rights by contract and pursuant to law.

97.     Defendants abused their discretion when they denied Plaintiff's Separation Benefits using irrelevant factors and considerations, including:

  a.     An alleged temporary nature of the material and adverse diminishment of duties and responsibilities;

  b.     The lack of a promise or guarantee for certain size projects;

  c.     The lack of promise or guarantee  for certain levels of supervisor or management responsibilities;

  d.     The lack of title change; and

  e.     Inserting a requirement that the material and adverse diminishment of duties and responsibilities was caused by the Change in Control.

98.     Defendants further abused their discretion when they interpreted Plan terms that are not ambiguous.

99.     Defendants abused their discretion by exercising discretion over non-discretionary Plan terms.

100.     Defendants abused their discretion by denying Plaintiff his Separation Benefits under the Plan when similarly situated Participants were granted benefits under the Plan.

101.     Defendants' denial of Separation Benefits and its refusal to reverse its decisions upon reviews of Plaintiff's claim and appeal were not substantially justified decisions, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuse of any discretion allowed, and were wrongful under all the circumstances.

102.     ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) provides a plan participant such as Plaintiff with a civil action to recover benefits due under the terms of a plan and to enforce his rights under the terms of the plan. Plaintiff is entitled to recover the Separation Benefits due to him under the terms of the Plan.

103.     As a result of Defendants' violations of ERISA and/or the clear language of the Plan alleged above, Plaintiff has been denied his Separation Benefits due.

104.     In addition to the Separation Benefits due and any other statutory remedies permitted, pursuant to 29 U.S.C. §1132(g), Plaintiff is further entitled to an award of reasonable attorneys' fees and costs incurred in bringing this action.

## SECOND CLAIM FOR RELIEF
**(Breach of Fiduciary Duty, ERISA Section 404(a), 29 U.S.C. §1104(a))**

105.     Plaintiff incorporates by reference all allegations set forth above, as if fully set forth herein.

106.    ERISA Section 404(a), 29 U.S.C. §1104(a)(1) provides, *inter alia*, that a fiduciary shall discharge duties with respect to a plan solely in the interests of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with Title I of ERISA.

107.    A cause of action to enforce Section 404 is provided by ERISA Section 502(a)(3), 29 U.S.C. §1132(a)(3).

108.    Defendants' denial of Separation Benefits and its refusal to reverse its decisions upon reviews of Plaintiff's claim and appeal were not substantially justified decisions, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuse of any discretion allowed, and were wrongful under all the circumstances.

109.    Additionally, the Plan Administrator failed to comply with its fiduciary duties under the Plan by, at a minimum:

a.      Failing to act in accordance with the instruments governing the Plan by controverting its plain meaning and introducing language in its denial of Separation Benefits that is not contemplated by the Plan;

b.      Failing to notify Plaintiff of its benefit determination on review with the timeframe required by the instruments governing the Plan;

c.      Acting in its own self-interest by refusing to consider evidence showing that the denial of Separation Benefits had been in error;

d.      Failing to correct its mistake in denying Plaintiff's Separation Benefits;

e.      In bad faith, forcing Plaintiff to file a civil action to obtain the relief that it

should have provided without the need for this litigation.

110.    Further, the Plan Administrator breached its fiduciary duty to Plaintiff when it

denied Plaintiff's Separation Benefits using irrelevant factors and considerations, including:

a.      An alleged temporary nature of the material and adverse diminishment of

duties and responsibilities;

b.      The lack of a promise or guarantee for certain size projects;

c.      The lack of promise or guarantee  for certain levels of supervisor or

management responsibilities;

d.      The lack of title change; and

e.      Inserting a requirement that the material and adverse diminishment of

duties and responsibilities was caused by the Change in Control.

111.    The Plan Administrator further breached its fiduciary duty to Plaintiff when it

interpreted Plan terms that are not ambiguous.

112.    The Plan Administrator breached its fiduciary duty to Plaintiff by exercising

discretion over non-discretionary Plan terms.

113.    The Plan Administrator breached its fiduciary duty to Plaintiff by denying

Plaintiff his Separation Benefits under the Plan when similarly situated Participants were granted

benefits under the Plan.

114.    As a result of the Plan Administrator's breach of its fiduciary duty to Plaintiff,

Plaintiff has suffered losses, including, but not limited to, denial of Separation Benefits owed to

him under the Plan, and such other and further relief as is just and equitable under the circumstances.

115.     In addition to the Separation Benefits due and any other statutory remedies permitted, pursuant to 29 U.S.C. §1132(g), Plaintiff is further entitled to an award of reasonable attorneys' fees and costs incurred in bringing this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants as follows:

1.     Declare that the Defendants breached the duties, responsibilities and obligations imposed on them by ERISA;

2.     Declare that Plaintiff suffered a Good Reason Event, resigned within 90 days of the Good Reason Event as required, and is therefore entitled to Separation Benefits under the Plan;

3.     Enter judgment in Plaintiff's favor and against Defendants and order the Plan to pay Separation Benefits to Plaintiff in an amount equal to the contractual amount of benefits to which Plaintiff is entitled;

4.     Order Defendants to pay Plaintiff pre-judgment interest on all Separation Benefits that have accrued prior to the date of judgment;

5.     Declare that Plan Administrator failed to comply with its obligations as a fiduciary under the ERISA Plan;

6.     Order Defendants to pay the Plaintiff the costs of suit herein, and a reasonable attorneys' fee, pursuant to ERISA Section 502(g)(1), 29 U.S.C. §1132(g);

7.     Additional relief as allowed by statute and by applicable law in the form of

statutory damages and penalties; and

8.     Any and all additional equitable relief the Court deems just and proper.

Respectfully submitted this 23rd day of September, 2021.

By:     /s/ *Leah P. VanLandschoot*
        Leah P. VanLandschoot, #35723
        Amy M. Maestas, #46925
        THE LITIGATION BOUTIQUE LLC
        1720 S. Bellaire Street, Suite 520
        Denver, Colorado 80222
        T: 303.355.1942
        F: 303.355.2199
        lvanlandschoot@thelitbot.com
        amaestas@thelitbot.com

        **ATTORNEYS FOR PLAINTIFF
        DAVID B. HOFF**

**Plaintiff's Address:**
32320 Robinson Hill Road
Golden, Colorado 80403