# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **DAVID B. HOFF** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **AMENDED AND RESTATED** | § | |
| **ANADARKO PETROLEUM** | § | **Civil Action** |
| **CORPORATION CHANGE OF** | § | **No. 1:21-CV-02589-DDD-MEH** |
| **CONTROL SEVERANCE PLAN, AND** | § | |
| **ANADARKO PETROLEUM** | § | |
| **CORPORATION HEALTH AND** | § | |
| **WELFARE BENEFITS** | § | |
| **ADMINISTRATIVE COMMITTEE** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, CROSS MOTION FOR SUMMARY JUDGMENT, AND MOTION FOR ENTRY OF JUDGMENT FOR DEFENDANTS

Dated: September 16, 2022

Respectfully submitted,

/s/ Shauna Johnson Clark

Shauna Johnson Clark
Texas State Bar No. 00790977
shauna.clark@nortonrosefulbright.com

Kimberly F. Cheeseman
Texas State Bar No. 24082809
kimberly.cheeseman@nortonrosefulbright.com

Andrew Yeh
Texas State Bar No. 24098645
andrew.yeh@nortonrosefulbright.com

Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:     (713) 651-5151
Facsimile:     (713) 651-5246

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY ........................................................... 1

II.  ISSUES PRESENTED ........................................................................ 2

III.  NATURE AND STAGE OF THE PROCEEDINGS ...................................... 2

IV.  DEFENDANTS' STATEMENT OF MATERIAL FACTS ............................... 3

V.  FACTUAL BACKGROUND .............................................................. 3

    1.  The Plan's Coverage and Administration .............................. 3

    2.  The Committee's Appointment and Plan Interpretation ...................... 4

    3.  Hoff's Position at Anadarko and Oxy as a Project Manager and Resignation ........................................................... 5

    4.  The Committee Considers Hoff's Initial Claim for Benefits .............. 6

    5.  Hoff Requests an Appeal Review of the Committee's Initial Determination ........................................................ 9

    6.  The Committee Reviews Hoff's Appeal ................................. 9

    7.  The Committee Reviews Hoff's Appeal in an Additional Meeting ................... 10

VI.  LEGAL STANDARD .......................................................... 14

VII.  ARGUMENT & AUTHORITIES ................................................ 16

    1.  The Committee's Decision Was Not Arbitrary and Capricious ......................... 16

        a.  The Committee Did Not Have a Weighable Conflict of Interest ............ 16

        b.  The Committee's Determination Was Supported by Substantial Evidence ....................................................... 17

        c.  Hoff's Disagreement With the Committee's Analysis Does Not Show that Its Decision Was Arbitrary and Capricious .......................... 20

        d.  Hoff's Cited Authority Is Unavailing ................................. 23

    2.  A Benefit Award Is Not Warranted .................................... 24

    3.  Hoff's Breach of Fiduciary Duty Claim is Duplicative and Meritless ............... 25

VIII.  CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Abbott Severance Pay Plan for Employees of Kos Pharm.*,
   781 F. Supp. 2d 238 (D.N.J. 2011) ........................................................................19

*Adamson v. Unum Life Ins. Co. Of Am.*,
   455 F.3d 1209 (10th Cir. 2006) ......................................................................15, 18

*Benson v. Hartford Life & Acc. Ins. Co.*,
   511 F. App'x. 680 (10th Cir. 2013) ....................................................................15

*Bowles v. Quantum Chem. Co.*,
   266 F.3d 622 (7th Cir. 2001) ..............................................................................23

*Boyd v. ConAgra Foods, Inc.*,
   879 F.3d 314 (8th Cir. 2018) ..............................................................................18

*Brown v. Hartford Life Ins. Co.*,
   428 F. App'x. 817 (10th Cir. 2011) ....................................................................16

*Caldwell v. Life Ins. Co. of N. Am.*,
   287 F.3d 1276 (10th Cir. 2002) ..........................................................................25

*Chalker v. Raytheon Co.*,
   291 F. App'x. 138 (10th Cir. 2008) ....................................................................22

*Clark v. Fifth Amended & Restated Newfield Expl. Co.*,
   No. 4:19-CV-03221, 2021 WL 5155699 (S.D. Tex. May 10, 2021) ..................18

*Clayton v. ConocoPhillips Co.*,
   No. H-08-3447, 2010 WL 11578477 (S.D. Tex. July 2, 2010) ..........................19

*Daubertin v. HCR Manor Care, Inc.*,
   373 F.3d 822, 824 (7th Cir. 2004) ......................................................................24

*Ellis v. Liberty Life Assurance Co. of Boston*,
   958 F.3d 1271 (10th Cir. 2020) ..........................................................................15

*Evans v. Newfield Expl. Co.*,
   No. 4:19-CV-2552, 2021 WL 2764858 (S.D. Tex. June 11, 2021), *report and
   recommendation adopted*, 2021 WL 3473493 (S.D. Tex. Aug. 6, 2021) ..............18, 19, 20

*Gall v. Liberty Mut. Ins.*,
   No. 00 C 3956, 2001 WL 290194 (N.D. Ill. Mar. 16, 2001) ..............................19

*Guild v. Cont'l Cas. Co.*,
    25 F. App'x. 753 (10th Cir. 2001) ......................................................................16

*Hancock v. Metro. Life Ins. Co.*,
    590 F.3d 1141 (10th Cir. 2009) ......................................................................17

*Hupp v. Metromail Corp. Special Severance Plan*,
    133 F. Supp. 2d 681 (N.D. Ill. 2001) ..............................................................19

*Ihde v. United of Omaha Life Ins. Co.*,
    No. 17-CV-00847-RM-NYW, 2017 WL 5444551 (D. Colo. Nov. 14, 2017)........................25

*Kreuger v. Surewest Communications, Inc.*,
    No. 2:13-CV-02098, 2014 WL 4635581 (E.D. Cal. Sept. 11, 2014) ....................................18

*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment &*
    *Dependent Life Ins. Plan*,
    605 F.3d 789 (10th Cir. 2010) ......................................................................14

*Manna v. Phillips 66 Co.*,
    820 F. App'x 695 (10th Cir. 2020) ..................................................................15

*Martinez v. Plumbers & Pipefitters Nat. Pension Plan*,
    795 F.3d 1211 (10th Cir. 2015) ......................................................................14

*McClure v. Vice President, Human Res., Union Carbide Corp.*,
    No. H030054, 2005 WL 1214645 (S.D. Tex. May 20, 2005) ..........................................23, 24

*Murphy v. Deloitte & Touche Group Ins. Plan*,
    619 F.3d 1151 (10th Cir. 2010) ......................................................................16

*Sanborn-Alder v. Cigna Grp. Ins.*,
    771 F. Supp. 2d 713 (S.D. Tex. 2011) ..............................................................22

*Walden v. Metro. Life Ins. Co. of Am., Inc.*,
    75 F. Supp. 3d 1320 (D. Colo. 2014)................................................................25

*Williams v. Metro. Life Ins. Co.*,
    No. 07-CV-2062-REB-CBS, 2011 WL 97137 (D. Colo. Jan. 11, 2011), *aff'd*,
    459 F. Appx. 719 (10th Cir. 2012)..................................................................25

*Yochum v. Barnett Banks, Inc. Severance Pay Plan*,
    234 F.3d 541 (11th Cir. 2000) ......................................................................25

Defendants Amended and Restated Anadarko Petroleum Corporation Change of Control Severance Plan ("Plan") and Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee ("Committee") (collectively "Defendants") file their Response to Plaintiff's Motion for Summary Judgment, Cross Motion for Summary Judgment, and Entry of Judgment for Defendants.

## I.    <u>INTRODUCTION AND SUMMARY</u>

This is an ERISA plan dispute regarding whether the Committee acted within its discretion to deny Plaintiff David Hoff's ("Hoff") claim for severance benefits under the Plan, which was put into place by Anadarko Petroleum Corporation ("Anadarko") in the event of a change of control. Among other things, the Plan provides for severance benefits if employees experience a material and adverse diminishment in their job duties such that they are effectively terminated. The Committee's decision to deny benefits is reviewed on a deferential arbitrary and capricious standard.

Hoff worked as a Project Manager for Anadarko, and after Occidental Petroleum Corporation ("Oxy") acquired Anadarko, Hoff continued to work as a Project Manager for Oxy. On June 4, 2020, Hoff voluntarily resigned from Oxy and made a claim for benefits under the Plan. In particular, Hoff alleged that his duties and responsibilities at Oxy were materially and adversely diminished in comparison to the duties and responsibilities he previously held at Anadarko. While Hoff alleges he is entitled to benefits because there was a change in the size of his projects, his arguments do not show a material and adverse diminishment in his duties and responsibilities. Being assigned projects of different size and scope was a regular part of a Project Manager's job duties both before and after the change of control. Accordingly, the Committee determined that a transition from one project to another would not constitute a material and adverse diminishment of Hoff's duties and responsibilities.

As explained more fully below, Hoff's claim fails under the differential arbitrary and capricious standard. Pursuant to the terms of the Plan, the Committee members did not receive any compensation for their service. They did not have a financial interest in whether or not Hoff received benefits under the Plan. After reviewing his claim on three separate occasions, considering all documents provided by Hoff, speaking with Hoff's supervisors on multiple occasions, and considering documents provided by Hoff's supervisors, the Committee determined that Hoff was not entitled to benefits because his duties and responsibilities were not materially and adversely diminished. While Hoff may prefer his own analysis and interpretations of the Plan, his opinions do not show the Committee's decision was arbitrary and capricious. Instead, the Committee's decision to deny benefits under the Plan was made on a reasoned basis, was supported by substantial evidence, and should be affirmed. Accordingly, the Court should grant Defendants' Motion for Summary Judgment, deny Hoff's Motion for Summary Judgment, and enter judgment in favor of Defendants.

## II.    ISSUES PRESENTED

1. Whether the Committee's decision to deny severance benefits to Hoff was arbitrary and capricious.

2. Whether the Committee's decision to deny severance benefits to Hoff was a breach of its fiduciary duty.

## III.    NATURE AND STAGE OF THE PROCEEDINGS

On September 23, 2021, Hoff filed this lawsuit against Defendants, alleging two claims: (i) denial of benefits pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and (ii) breach of fiduciary duty pursuant to ERISA Section 404(a), 29 U.S.C. § 1104(a). D.E. 1. Defendants filed the administrative record on July 22, 2022. *Administrative Record*, D.E. 26-1

(hereinafter *Admin. R.* at ___). Hoff filed his Motion for Summary Judgment on August 26, 2022.

D.E. 30. Defendants now file their Response, Cross Motion for Summary Judgment, and Motion

for Entry of Judgment for Defendants.

## IV. DEFENDANTS' STATEMENT OF MATERIAL FACTS[1]

1. The Plan confers discretionary authority on the Committee to administer and interpret the Plan. *Admin. R.* at 23-24.

2. The Committee was not compensated for their work and had no personal financial interest in whether or not Hoff received benefits. *Admin. R.* at 26.

3. The Committee was presented with all materials prepared by Hoff in support of his initial claim. *Admin. R.* at 92-260.

4. The Committee considered and discussed the materials prepared by Hoff in support of his initial claim. *Admin. R.* at 499-500.

5. The Committee was presented with all of the materials prepared by Hoff in support of his appeal. *Admin. R.* at 31-90, 261-380; 383-494

6. The Committee considered and discussed the materials prepared by Hoff in support of his appeal. *Admin. R.* at 494-498

7. The Committee considered Hoff's appeal at two separate meetings. *Admin. R.* at 494-498

## V. FACTUAL BACKGROUND

### 1. The Plan's Coverage and Administration

The Plan was enacted by Anadarko's Board of Directors on January 28, 1998 "to provide

severance compensation for its eligible employees whose employment terminates following a

Change of Control."[2] *Admin. R.* at 1. Section 4.2 (a) of the Plan outlines a number of termination

scenarios that give rise to separation benefits. *Id.* at 8. One of the scenarios listed in Section

4.2(a)(ii) is "a termination for Good Reason during the Applicable Period; provided, that, the

---

[1] Hoff's Motion does not include a Statement of Material Fact pursuant to the Local Rule 56.1.

[2] The Plan was amended three times, once on January 1, 2008, again on January 1, 2009, and for a final time on December 20, 2010. *Admin. R.* at 26-30.

Participant terminates his or her Employment within ninety (90) days of such occurrence." *Id.* Good Reason is defined in the Plan in Section under Article II(s) and includes a circumstance where: "the Participant's duties and responsibilities as an Employee are materially and adversely diminished in comparison to the duties and responsibilities enjoyed by the Participant immediately prior to the Change of Control." *Id.* at 6.

On August 8, 2019, Oxy acquired Anadarko pursuant to a merger agreement by and among Anadarko, Oxy, and a subsidiary of Oxy. *Id.* at 588. This merger also included acquisition of Western Midstream Partners, LP ("WES"), which was an Anadarko limited partnership. This transaction constituted a Change of Control under the Plan. *Id.*

**2.     The Committee's Appointment and Plan Interpretation**

Section 2(w) of the Plan defines the Plan Administrator as a Committee consisting of at least five members appointed by the Senior Vice President Responsible for Human Resources of the Company. *Admin. R.* at 26. Section 9.3 outlines the claims review procedure for the Committee, and Section 9.3(g) specifically provides that the "Committee shall have the discretion to make any findings of fact needed in the administration of the Plan, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion that the Committee deems to be appropriate in its sole judgment." *Id.* In addition, Section 9.3(e) empowers the Committee to adopt procedures for the Plan. *Id.* at 23.

On September 10, 2019, the Committee distributed a Plan interpretation and examples document. *Id.* at 85-88. The document contains examples of what would constitute a material and adverse diminishment in duties and responsibilities. *Id.* The document specifically explained that the change in duties or responsibilities must be material to be considered and that not all changes in job duties would be material. *Id.* The document also provided the following specific interpretation and examples:

- The change to duties must be permanent. A short-term reduction in duties due to a lack of work, transition, reorganization, or similar matters does not qualify.

  > Example: During the integration of Oxy and Anadarko, work slows down while management reviews work processes. Because this is temporary, it does not qualify.

  > Example: A supervisor states that one or more job duties held by the employee has been taken away. This is a permanent change.

*Id.*

## 3. Hoff's Position at Anadarko and Oxy as a Project Manager and Resignation

Hoff was employed as a Project Manager with Anadarko prior to the acquisition by Oxy. *Admin. R.* at 92. At Oxy, Hoff continued in his role as a Project Manager. *Id.* On March 30, 2020, Hoff submitted a Good Reason Inquiry Form ("Inquiry Form") to the Plan Administrator. *Id.* at 252-260. The Inquiry Form was a procedure approved by the Plan Administrator that allowed employees to inquire as to whether they had incurred a Good Reason event ***without*** having to first resign their employment. *Id.* at 588. Hoff's Inquiry Form claimed a Good Reason event occurred on March 9, 2020 because his duties and responsibilities on the Latham Gas project were materially and adversely diminished. *Id.* at 589. The form included a statement by Hoff describing his previously assigned project and current project. *Id.* at 590. On June 4, 2020, the Good Reason Subcommittee notified Hoff that his described circumstances did not constitute a Good Reason event. *Id.* at 246-248. Specifically, the correspondence explained:

> We understand that while the monetary value and size of the Latham program has decreased, your responsibilities as a Project Manager are the same. As a Project Manager, you are responsible for managing the scope, schedule and budget of a given project regardless of the size or monetary value. We understand that there are many projects to execute that are critical to WES in order to meet contractual obligations and maintain safe, reliable operations. Thus, your duties and responsibilities are the same and not diminished.

*Id.* at 247. The correspondence provided an outline of the claims procedure under the Plan if Hoff wished to pursue filing a formal claim for benefits. *Id.* at 247.

Despite being told as part of the Inquiry Form process that he did not suffer a material and adverse diminishment in his duties, Hoff nevertheless voluntarily resigned his employment with Oxy on June 4, 2020. *Id.* at 92. He then retained legal counsel and submitted a formal claim for benefits on July 27, 2020. *Id.* at 236-242.

4.     **The Committee Considers Hoff's Initial Claim for Benefits**

On November 5, 2020, the Committee considered Hoff's claim for benefits at its meeting and kept minutes of the discussion. *Id.* at 499. Committee members Michele Oubre, Angela Knight, Jim Tally, Mark Grommesh, and Madelaine Pfahler were present at the meeting. *Id.* Prior to the meeting, the Committee received all documents submitted by Hoff in support of his claim: (i) the claim letter from Hoff's counsel, which included a declaration by Jay Allin ("Allin"), Hoff's supervisor and Director of Major Projects; (ii) Hoff's letter designating his counsel as his representative; (iii) Hoff's Inquiry Form submission; and (iv) the correspondence in response to his Inquiry Form. *Id.* at 235-260. During the meeting, the Committee reviewed the documentation provided by Hoff and then interviewed Allin. *Id.* at 500.

During the interview, the Committee asked Allin about the declaration he signed for Hoff. *Id.* Specifically, the Committee asked Allin if he believed the information in his declaration meant that Hoff had experienced a diminishment of his duties and responsibilities. *Id.* Allin responded that he did not believe Hoff had any diminishment of duties and responsibilities. *Id.* Hoff kept the same duties and responsibilities, and the only thing that changed was the size of the projects, which was due to the temporary economic downturn because of COVID. *Id.* Allin explained that while one of Hoff's project, the Latham Gas project, was very large, not all projects are of that size. *Id.* Hoff did not have a diminishment in duties because Project Managers are responsible for the projects assigned to them and the size and scope of projects change depending on the needs of

the company.  *Id.*  Allin informed the Committee that although the Latham Gas project had ended in March, he was assigning Hoff new projects.  *Id.*

The Committee asked Allin if Project Managers were only assigned to projects of a certain budget or size or that have a certain number of employees or contractors.  *Id.*  Allin noted that no two projects were the same and budget and staffing would fluctuate from project-to-project.  *Id.* The Committee also asked if Project Managers were only assigned projects that would enhance and increase their responsibilities, experience level, and decision-making responsibilities.  *Id.* Allin explained that nothing guarantees or requires a Project Manager to receive projects at a certain level, and that projects would vary year-to-year based on business need.  *Id.*  Allin also noted that as the economy recovered from COVID, projects would increase.  *Id.*

After the interview with Allin, the Committee discussed Hoff's claim and unanimously denied Hoff's claim.  *Id.*  On January 22, 2021, the Committee informed Hoff that his initial claim had been denied.  *Id.* at 92-146.  The Committee's denial letter identified the documents reviewed by the Committee, detailed the facts and analysis of Hoff's claim, and addressed the specific arguments made by Hoff.  *Id.* at 92-102.  For the assignment of new projects, the Committee explained:

> As is true with all Project Managers, Mr. Hoff's role as Project Manager is to manage the projects of the company. The Project Manager role does not indicate that a specific budget will be assigned or that a specific number of contractors or employees will be managed. Instead, the role provides that **Project Managers manage the projects of the company. Budget size and the number of contractors and employees vary depending on the project and no two projects have the exact same budget, contractors, etc.** It is incorrect to state that a change in the project, which will always mean a change in the size and scope, is a diminishment of duties and responsibilities if the size and scope is less than a prior project. There is no guarantee or requirement that a Project Manager will manage a specific size project with a minimum budget and number of employees or contractors.

*Id.* at 93 (emphasis added).  The Committee further stated:

> Nothing in the role of Project Manager guarantees or requires projects to be at a certain expertise level or dollar amount. The role of Project Manager is to manage the projects of

the company and the projects will vary based on many factors including corporate goals and the economic environment. Mr. Allin told the Committee that the size and scope of projects varies from year-to-year in the normal course of business operations. He said that **it is not uncommon to have Project Managers manage both large, medium and small projects over time as the company changes its focus or responds to economic conditions.**

*Id.* at 94 (emphasis added). In response to Hoff's allegation that a temporary change could constitute a Good Reason event, the Committee attached its Plan interpretation and examples document, which previously explained that temporary changes were not Good Reason events. *Id.* at 95.

As to Hoff's professional responsibilities, experience level requirements, marketability and growth arguments, the Committee determined that "Mr. Hoff cannot properly conclude that his career was compromised because, at the time the Latham Gas project ended, the WES projects were smaller." *Id.* at 95. The Committee further detailed that "experience level requirements, marketability and growth are not duties and responsibilities," and were therefore not relevant to the analysis. *Id.*

In addressing Hoff's arguments on his supervisory duties, the Committee stated:

A Project Manager manages projects. Different projects require different numbers of employees and contractors to run the project. As a Project Manager, Mr. Hoff is not directly responsible for supervising or managing a specified number of employees. He is responsible for managing projects and the number of employees and contractors necessary to complete a project varies from project to project**. No two projects have the same number of individuals to supervise. The fact that different projects require different numbers of employees and contractors does not change the fact that Mr. Hoff's job is to manage the projects of the company and any changes are a normal and expected part of his job.**

*Id.* at 95-96 (emphasis added). The Committee also addressed each of the legal cases referenced in Hoff's claim. *Id.* at 96-97. The Committee included both a summary of the cited case and the distinguishing facts and factors from Hoff's claim. *Id.* at 96-99. The final section of the

- 8 -

Committee's denial letter provided Hoff with another copy of the Plan and informed him of his right to appeal the Committee's initial interpretation. *Id.* at 101-102.

### 5. Hoff Requests an Appeal Review of the Committee's Initial Determination

On March 11, 2021, Hoff submitted a request for appeal through his counsel. *Id.* at 386-411. In addition to the letter from his counsel, Hoff's appeal materials included Hoff's performance reviews for 2015 and 2017, the same declaration by Allin submitted with his original claim, correspondence from Michael Lucas noting that Hoff would be helping the Mechanical Integrity ("MI") team with questions, and Hoff's employee summary report. *Id.* On June 7, 2021, the Committee received the appeal materials submitted by Hoff, the original claim denial letter and attachments, and the Hoff's Inquiry Form submissions and response. *Id.* at 383.

### 6. The Committee Reviews Hoff's Appeal

On June 9, 2021, the Committee considered Hoff's appeal at its meeting and kept minutes of the discussion. *Id.* at 494-496. Committee members Michele Oubre, Jim Tally, Mark Grommesh, and Melissa Jenkins were present at the meeting. *Id.* During the meeting, the Committee interviewed Allin for a second time along with Mike Forsyth ("Forsyth"), Vice President of Engineering. *Id.* at 495-496. The Committee reviewed Hoff's claim and the corresponding information provided before interviewing Allin and Forsyth. *Id.* The Committee first asked Allin whether there were other projects like the Latham Gas project that existed both before and after the change of control. *Id.* at 495. Allin explained that the Latham Gas project was the largest project at WES and there were no other similar projects before and after the change of control. *Id.* Allin explained that after the Latham Gas project came to an end, he assigned Hoff to the Ramsey Slug Cather and Wattenberg Overhaul projects. *Id.* Allin further stated that he asked Hoff if he would be willing to take on projects in West Texas, but Hoff declined because he did not want to travel. *Id.*

The Committee, again, asked Allin if Hoff's duties and responsibilities were changed following the change of control. *Id.* Allin, again, stated that none of Mr. Hoff's duties and responsibilities had changed. For a second time, Allin explained the role of a Project Manager was to handle the available projects of the company. *Id.* Based on a question from the Committee, Allin further described the process for establishing projects before and after the change of control, noting that projects were determined depending on the goals and needs of the company. *Id.* He further explained that economic fluctuations varied the number and scope of projects, and this could be impacted on a cyclical nature. *Id.* There are economic fluctuations from time-to-time in the oil industry, and Hoff terminated his employment at the beginning of COVID when the oil industry was hardest hit by the economic downturn. *Id.*

The Committee asked Allin whether Hoff had experienced a change in duties and responsibilities because he was requested to help out the MI team with questions. *Id.* Allin explained this was not a change of responsibilities and duties, but just a temporary assignment and a way to help increase Hoff's experience in that area, especially because the work related to his Wattenberg project. *Id.*

When asked if Hoff was a manager or an individual contributor both before and after the change of control, Allin explained that Hoff has always been an individual contributor. *Id.* While Hoff managed projects, he did not have any direct reports. *Id.* Hoff did not participate in performance reviews or hire and fire employees. *Id.*

The Committee discussed Hoff's appeal but did not make a determination in its June 9, 2021 meeting. *Id.* The Committee determined that it wanted to seek additional information on projects that were available following the change of control. *Id.*

**7.    The Committee Reviews Hoff's Appeal in an Additional Meeting**

On July 7, 2021, the Committee considered Hoff's appeal in a second meeting and kept minutes of the discussion.  *Id.* at 497-498.  Committee members Madelaine Pfahler, Mark Grommesh, and Melissa Jenkins were present at the meeting.  *Id.*  Prior to the meeting, the Committee confirmed with Allin that the Committee had correctly understood his interview from June 9, 2021.  *Id.* at 261.  The Committee also obtained a project schedule and explanation from Forsyth.  *Id.* at 262-270.  The Committee reviewed these materials along with the original appeal documentation.  *Id.* at 261-380.

During the meeting, the Committee interviewed Allin for a third time.  *Id.* at 497-498.  The Committee asked Allin whether the Latham Gas project was completed at the time of the change of control.  *Id.* at 498.  Allin explained that the project did not wrap up until shortly after the change of control.  *Id.* at 498.  Allin reiterated that the role of a Project Manager does not have an entitlement or expectation of project size, but instead manages the projects that are assigned to them.  *Id.*  Allin also confirmed that Hoff was an individual contributor and never had direct reports before or after the change of control.  *Id.*

The Committee also asked Allin about the level of experience of the other Project Managers in his group.  *Id.*  Allin indicated that the other Project Managers had similar experience as Hoff and were also assigned projects that were available at the time.  *Id.*  The Committee, again, asked Allin about the declaration he signed.  *Id.*  Allin explained he thought the document was factual and did not pick sides.  *Id.*  For a third time, Allin explained he did not believe any diminishment of Mr. Hoff's duties and responsibilities had occurred.  *Id.*

The Committee discussed Hoff's appeal, the interviews with Allin and Forsyth, and the documentations related to Hoff's appeal.  After the discussion, the Committee unanimously denied Hoff's appeal.  *Id.*

On July 9, 2021, Hoff was notified of the Committee's decision. *Id.* at 31-90. The appeal denial letter identified the documents reviewed by the Committee, the facts and analysis of Hoff's claim, and addressed specific arguments made in Hoff's claim. *Id.* at 31-90. The Committee outlined the documents reviewed as part of Hoff's appeal, which included (i) the appeal letter dated March 11, 2021 and the materials submitted in support of the appeal; (2) the appeal letter document requests and response dated April 9, 2021; (iii) the claim denial letter dated January 22, 2021; (iv) the claim for benefits dated July 27, 2020 and all materials submitted in support of the claim for benefits; (v) a list of WES projects provided by Forsyth; and (vi) all other information initially considered by the Committee in connection with Hoff's claim for benefits. *Id.* at 31. The correspondence also noted that the Committee discussed the appeal with both Forsyth and Allin. *Id.* at 32.

In response to Hoff's allegation on appeal that his performance reviews indicated a material diminishment of his duties and responsibilities, the Committee determined, "[a]lthough Mr. Hoff had strong performance reviews, this did not mandate or require Mr. Hoff to only work on certain projects that would continue to increase his level of responsibility." *Id.* at 34. The Committee further explained that changes in project size did not constitute a material and adverse diminishment of duties and responsibilities because variations in projects, including the budget and scope, were a regular and expected part of working as a Project Manager. *Id.* For a similar reason, the Committee found that a Hoff's arguments about a diminishment in budget size, which would vary on a project-to-project basis, did not represent a material diminishment of duties and responsibilities. *Id.*

The Committee also addressed Hoff's allegation that his change in job duties was permanent because he was asked to assist in answering questions for the MI Team. *Id.* at 35. The

Committee referenced its discussion with Allin, who explained the work for the MI team was not a permanent change but instead a temporary assignment designed to assist the MI team and provide additional experience for Hoff while he had availability. *Id.* The Committee further stated that it was unreasonable for Hoff to believe that he had a material diminishment in duties and responsibilities because the Latham Gas project was larger than a typical project, and there was a temporary change in project activity because of the impact of COVID on the oil industry. *Id.* In addition, the Committee noted fluctuation in response to economic changes was a normal occurrence in the role of a Project Manager. *Id.* at 36.

For Hoff's allegation that his change in projects diminished his professional responsibilities, experience level requirements, marketability and growth, the Committee stated "Mr. Hoff's job as a Project Manager was to manage the projects of the company—whether at Anadarko, Oxy or WES." *Id.* at 36. The Committee further explained, "[t]he projects that are undertaken and assigned to a Project Manager depend on a Project Manager's workload, the economy and the company's resources and planning goals." *Id.* The Committee did not find merit in Hoff's argument because, as it stated numerous times, the role of a Project Manager is to manage the projects of the company, and "[i]t is not the duty of [the Company] to create projects of a larger scope and scale so that Mr. Hoff would want to work on those projects." *Id.*

The Committee also addressed Allin's declaration by outlining the information provided by Allin. *Id.* at 37. Specifically, the Committee outlined Allin's statements that Project Managers are assigned projects that are available at the time the Project Manager has capacity for additional work, that project size normally fluctuates, that the Latham Gas project was not at typical project in terms of size, and that Hoff was an individual contributor without any direct reports. *Id.* The Committee concluded its correspondence with a citation to the relevant Plan sections for the denial

of Hoff's claim and informed Hoff of his rights to reasonable access to information and a right to bring a claim in U.S. Federal District Court.  *Id.* at 40-41.

Shortly thereafter, on September 23, 2021, Hoff filed this lawsuit.  D.E. 1.

## VI.    LEGAL STANDARD

When the terms of an ERISA benefit plan provide the administrator with discretionary authority, courts employ a deferential standard of review, "asking only whether the denial of benefits was arbitrary and capricious." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010).

Here, the Plan confers discretionary authority on the Committee.  *Admin. R.* at 23-24. Section 9.3(g) of the Plan specifically provides the Committee with the power to interpret the Plan and to make a determination as to the right of any person to benefits under the Plan.  *Id.*

> (g)  Effect of Committee Action.  The Plan shall be interpreted by the Committee in accordance with the terms of the Plan and their intended meanings.  However, t**he Committee shall have the discretion to make any findings of fact needed in the administration of the Plan, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion that the Committee deems to be appropriate in its sole judgmen**t.  The validity of any such finding of fact, interpretation, construction or decision **shall not be given *de novo* review if challenged in court**, by arbitration or in any other forum, **and shall be upheld unless clearly arbitrary or capricious**.

*Id.* at 23 (emphasis added).

The Tenth Circuit has held that this type of language provides for a deferential arbitrary and capricious standard of review.  *See Martinez v. Plumbers & Pipefitters Nat. Pension Plan,* 795 F.3d 1211, 1214 (10th Cir. 2015) (applying a deferential standard of review when the "Plan reserves to the Trustees the discretion to construe the terms of the Plan, to resolve any ambiguities, and to determine any questions which may arise with the Plan's application or administration,

including but not limited to determination of eligibility for benefits"). Notably, Hoff's Motion admits that an "abuse of discretion (arbitrary and capricious)" standard applies.[3] *See* D.E. 30 at 2.

Under an arbitrary and capricious review, the court will uphold an administrator's decision so long as it was made on a reasoned basis and supported by substantial evidence. *Manna v. Phillips 66 Co.*, 820 F. App'x 695, 700 (10th Cir. 2020). "Substantial evidence is 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision[]maker." *Id.* "Substantial evidence requires more than a scintilla but less than a preponderance.' " *Id.* "[T]here is no requirement that the basis relied upon be the only logical one or even the superlative one." *Adamson v. Unum Life Ins. Co. Of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). The review "inquires whether the administrator's decision resides 'somewhere on a continuum of reasonableness—even if on the low end." *Id.*

"The Supreme Court has observed that granting plan administrators deference in interpreting the plan promotes efficiency by encouraging resolution of disputes without litigation and promotes predictability "as an employer can rely on the expertise of the plan administrator rather than worry about the unexpected and inaccurate plan interpretations that might result from *de novo* judicial review." *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1278 (10th Cir. 2020).

---

[3] Hoff's Motion applies an arbitrary and capricious standard; however, Hoff's standard of review section asserts that if the language of the Plan is unambiguous, the Plan Administrator's decision must be reviewed *de novo*. D.E. at 30 at 10. Hoff cites to *Benson v. Hartford Life & Acc. Ins. Co.* for this proposition. 511 F. App'x. 680 (10th Cir. 2013). *Benson* does not apply. In *Benson*, the plaintiff's claim for benefits turned on the definition of "Employee." *Id.* at 687. The plan defined an "Employee" as "a person who works full-time," and defined "full-time" as "regular permanent employment for not less than the number of hours specified in the Policy Schedule," which was 20 hours a week. *Id.* The court explained that the plan terms were unambiguous and that plaintiff's denial of benefits was proper because she was able to work 20 hours a week to qualify as a full-time employee. *Id.* The terms at issue here are not similar to the terms at issue in *Benson*. Hoff ultimately acknowledges this difference, however, because his brief does not apply a *de novo* review and instead applies the deferential arbitrary and capricious standard.

# VII.    ARGUMENT & AUTHORITIES

**1.    The Committee's Decision Was Not Arbitrary and Capricious**

The Committee acted within its discretion and made a determination supported by substantial evidence, which included multiple reviews of the information provided by Hoff, several interviews of Hoff's supervisors, and a review of documentation provided by Hoff's supervisors. Hoff's arguments to the contrary are unavailing. The Committee did not have a weighable conflict of interest, and Hoff's disagreement with the Committee's analysis does not show that they considered incorrect or irrelevant facts or factors. The Committee's decision was well reasoned and should be affirmed.

**a.    The Committee Did Not Have a Weighable Conflict of Interest**

Depending on the circumstances of a particular case, courts may weigh a conflict of interest by the administrator, but Hoff's conflict of interest arguments here do not negate the Committee's reasonable basis for denying his claim. *See Guild v. Cont'l Cas. Co.*, 25 F. App'x. 753, 756 (10th Cir. 2001). Hoff argues that because the Committee consisted of long-term Oxy employees, the Court should reduce the amount of deference afforded to its decision. Hoff ignores the fact that pursuant to Section 2(j) of the Plan, none of the Committee members were compensated for their services. *Admin. R.* at 26. A lack of financial incentive is strong evidence against a weighable conflict of interest. *See Brown v. Hartford Life Ins. Co.,* 428 F. App'x. 817, 821 (10th Cir. 2011) (noting that defendant had taken steps to minimize any conflict of interest by paying a fixed salary to its decision makers without incentives for denying claims and separating the financial department from the claims department); *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1158 (10th Cir. 2010) (providing the example of walling off claims administrators from those interested in firm finances as an example of an active step to be used to reduce potential bias). Hoff's disagreement with the Committee's decision to deny benefits does not show that it

suffered from a weighable conflict of interest or that its decision was arbitrary and capricious. *See Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009).

### b. The Committee's Determination Was Supported by Substantial Evidence

The Committee conducted a thorough analysis of Hoff's claim at three separate meetings. *Admin. R.* at 494-500. Prior to each review, the Committee received all documents prepared by Hoff or Hoff's counsel. *Id.* at 92-260, 31-90, 261-380, 383-494. The Committee also sought information from and interviewed Allin, Director Major Projects, and Forsyth, Vice President Engineering. *Id.* at 494-500. Notably, the Committee considered Hoff's appeal at two separate meetings and sought additional information prior to the second meeting. *Id.* at 261-270, 494-498. The Committee's robust analysis was clearly communicated to Hoff in its initial claim denial and appeal denial letters. *Id.* at 31-234. In each of these letters, the Committee addressed the arguments presented by Hoff and outlined the bases for its determination that Hoff had not suffered a material and adverse reduction in his responsibilities. *Id.* at 31-43, 92-103.

The crux of Hoff's claim is that he believes he should have always received projects of a certain size and scope. In doing so, his Motion focuses on the differences between the Latham Gas project and his later assigned projects (the Ramsey Slug Catch project and Wattenberg Overhaul project). But Hoff's analysis misses the key inquiry—what is the scope and responsibilities of a Project Manager position? As Allin and Forsyth explained to the Committee on several occasions, the role of a Project Manager is to manage the projects of the company. *Id.* at 36, 494-500. It is common sense that projects fluctuate based on the needs of the company and the current economic conditions. *Id.* at 495, 498. Notably, as stated by Allin, Project Managers were not guaranteed projects of a certain size and scope. *Id.* at 495, 500.

Moreover, Hoff's continual focus on the Latham Gas project is unavailing. The Latham Gas project came to an end, which required Allin to assign Hoff to new projects. *Id.* at 495. Allin

explained several times to the Committee that the Latham Gas project was rare in terms of size and scope. *Id.* at 495, 500. In addition, Hoff was not hired as a Project Manager for the Latham Gas project specifically; instead, he was hired in the role of a Project Manager generally. Hoff did not experience a material diminishment in his duties and responsibilities because he was still being assigned projects and performing the duties of a Project Manager. The Committee's analysis of Hoff's claim is reasonable, based on substantial evidence (including three reviews of Hoff's claim), and should be affirmed. *See Adamson*, 455 F.3d at 1212 (noting that the court's review "inquires whether the administrator's decision resides 'somewhere on a continuum of reasonableness—even if on the low end").

Courts have similarly affirmed plan administrator determinations in severance benefit cases involving a plaintiff who alleges he suffered a material reduction in their duties. *See, e.g., Boyd v. ConAgra Foods, Inc.,* 879 F.3d 314, 322 (8th Cir. 2018) (finding the plaintiff failed to show that the administrator's decision was unreasonable and not supported by substantial evidence and rejecting his argument that he had been excluded from meetings and decision-making processes); *Evans v. Newfield Expl. Co.*, No. 4:19-CV-2552, 2021 WL 2764858, at *6 (S.D. Tex. June 11, 2021), *report and recommendation adopted*, 2021 WL 3473493 (S.D. Tex. Aug. 6, 2021) (finding that a committee's decision to deny benefits was supported by substantial evidence when the committee had personal knowledge of the plaintiff's position, reviewed a written job description, and reviewed a memorandum from the plaintiff's leadership); *Clark v. Fifth Amended & Restated Newfield Expl. Co.*, No. 4:19-CV-03221, 2021 WL 5155699, at *9 (S.D. Tex. May 10, 2021) (finding that a committee's decision to deny benefits was correct even when the record indicated that plaintiffs duties changed from human resources in nature to more administrative); *Kreuger v. Surewest Communications, Inc.*, No. 2:13-CV-02098, 2014 WL 4635581, at *8 (E.D.

Cal. Sept. 11, 2014) (affirming the administrator's decision that the plaintiff had not suffered a material reduction in duties and responsibilities and noting that while plaintiff had lost certain duties, they were cured by the addition of others); *Adair v. Abbott Severance Pay Plan for Employees of Kos Pharm.*, 781 F. Supp. 2d 238, 249 (D.N.J. 2011) ("Insofar as Adair opines on the diminution of his job and its significance, or the shift in its focus and nature, the Court cannot substitute Adair's suppositions or its own for those of the Plan Administrator."); *Clayton v. ConocoPhillips Co.*, No. H-08-3447, 2010 WL 11578477, at *6 (S.D. Tex. July 2, 2010) (finding there was no abuse of discretion where the plan administrator found that there were some differences between the job the plaintiff accepted and the job he was actually performing, but those differences did not constitute a "substantial reduction' of his position or responsibilities."); *Hupp v. Metromail Corp. Special Severance Plan*, 133 F. Supp. 2d 681, 692 (N.D. Ill. 2001) (same); *Gall v. Liberty Mut. Ins.*, No. 00 C 3956, 2001 WL 290194, at *5 (N.D. Ill. Mar. 16, 2001) (same).

The case *Evans v. Newfield Exploration Co.* is illustrative. In *Evans,* prior to the change of control, the plaintiff was a Senior Business Performance Management Professional. 2021 WL 2764858, at *1. In this role, his job was to manage, organize, and facilitate cross-functional projects. *Id.* The plaintiff alleged that his projects did not have an IT or systems component. *Id.* After the change of control, he was placed in the position of Senior IT Project Manager. *Id.* at 82. The plaintiff resigned from his position, alleging he had suffered a material reduction in the nature and scope of his job responsibilities because his new project assignments were focused exclusively on IT systems. *Id.* The plan's committee reviewed and denied his claim for benefits. *Id.* at *6.

Like the Committee here, the committee in *Evans* considered plaintiff's claim multiple times and took into account information provided by the plaintiff as well as the plaintiff's supervisor in determining that the plaintiff was not entitled to benefits. *Id.* Similarly, while the

plaintiff in *Evans* outlined a number of perceived differences between his positions, the court noted that the committee acted within its discretion in finding that his new position was not a material reduction. *Id.* Accordingly, the court in *Evans* determined that the committee's determination was not arbitrary and capricious. *Id.* at *6. In particular, the court held the committee's decision to deny benefits was supported by substantial evidence when the committee had personal knowledge of the plaintiff's position based on interviews, reviewed a written job description, and reviewed a memorandum from the plaintiff's leadership. *Id.*

Here, the Committee's analysis for Hoff claim was thorough and robust, and a review of the record shows that the decision was supported by substantial evidence. Hoff's disagreement with the Committee's findings is not sufficient to show that the Committee's decision was an abuse of discretion. *See id.* at *7 ("Plaintiff has not identified any material factual disputes [, and] [i]n essence, he simply objects to the Committee's decision and feels it did not give due consideration to his arguments").

c.     **Hoff's Disagreement With the Committee's Analysis Does Not Show that Its Decision Was Arbitrary and Capricious**

None of Hoff's arguments demonstrate an arbitrary and capricious decision by the Committee. Hoff makes four objections to the Committee's analysis: (1) the Committee should not have relied on the absence of promises or guarantees to Hoff, (2) the Committee improperly relied on his job title, (3) the Committee improperly focused on the COVID pandemic, and (4) the Committee's focus on the temporary nature of the change was improper. Each of Hoff's arguments are without merit.

First, Hoff alleges that the Plan did not require an employee to receive a guarantee or promise of certain duties and responsibilities before determining whether or not those duties and responsibilities were materially and adversely diminished. D.E. 30 at 14. Hoff's mischaracterizes

the Committee's analysis. The Committee's determination was based on its finding that the role of a Project Manager is not fixed to projects of a certain size or scope. *Id.* at 31-43, 92-103. If for example, Allin and Forsyth had informed the Committee that Project Managers were hired only to work on projects of a certain budget or scope, that would change the analysis; instead, Allin and Forsyth informed the Committee that size and scope of project vary depending on the needs of the company. *Admin. R.* at 494-500. As a result, Hoff's first argument is meritless.

Hoff's second argument—that the Committee improperly focused on his job title—is equally unavailing and deserves short shift. A review of the administrative record shows the Committee gathered detailed information regarding the duties of a Project Manager and focused its analysis on the ***duties*** of a Project Manager and not the ***title***. The Committee did not foreclose Hoff's claim for benefits merely because his job title remained the same.

Hoff's third and fourth arguments are also meritless. Hoff alleges that the Committee improperly focused on the impact of COVID on projects, and that the impact on projects was temporary. Hoff further alleges that the Committee read into the Plan a requirement that the diminishment be caused by the change of control and that the diminishment be permanent. D.E. 30 at 17, 20. This is simply not true. The Committee did not read additional terms into the Plan. The Committee's determination was based on the fact that before the change of control, Project Managers were expected to work on the projects of the company regardless of the project size or scope. After the change of control, Project Managers were expected to do the same—work on projects of the company regardless of the project size or scope. The Committee took specific note of Allin's statements that "fluctuations in the number and size of projects was a normal part of project management" (*Admin. R.* at 33), and "the size of projects for which Project Managers are responsible vary from year-to-year depending on the goals and priorities of the company." *Id.* at

94. The Committee also specifically referenced Allin's statement that 'it is not uncommon to work on bigger and smaller projects at various points in time as it all depends on the focus of the company and the company's priorities will change due to various factors, including the economy." *Id.* In light of this context from Allin, the Committee discussed the temporary impact of COVID on the available projects. The Committee's discussions of the duties/responsibilities Hoff had before and after the change of control does not demonstrate that it read in an additional requirement to the Plan. *See id.* at 31-43, 92-103.

In sum, Hoff's conclusory arguments cannot disregard the thorough and robust analysis performed by the Committee. Importantly, even if Hoff disagrees with Allin and Forsyth's description of his job, the Committee's determination is not arbitrary and capricious so long as it is based on evidence provided to the Committee, even if that evidence is disputable. *See Chalker v. Raytheon Co.,* 291 F. App'x. 138, 145 (10th Cir. 2008) ("Again, the question for this court is not whether MetLife made the 'correct' decision in terminating Chalker's LTD benefits . . . [w]hile Chalker may be able to dispute this evidence, he cannot contradict it to such an extent that it can be said MetLife's decision was arbitrary and capricious."); *Sanborn-Alder v. Cigna Grp. Ins.,* 771 F. Supp. 2d 713, 718 (S.D. Tex. 2011) (same). Allin reiterated in multiple meetings that Hoff's duties as a Project Manager were not diminished. Project Managers work on the projects that are expected to be different in size and scope. *See Admin. R.* at 494-500.

While Hoff cherry picks and misconstrues pieces of the Committee's analysis, he cannot avoid the Committee's thorough analysis as a whole. The Committee reviewed copious amounts of information and interviewed Hoff's supervisor on multiple occasions. From this information, the Committee determined that Hoff's position as a Project Manager remained the same as prior to the change of control. While Hoff focuses on the differences in the projects he was working on,

he conveniently ignores the fact he would have worked on projects of different size and scope prior to and after the change of control.

### d. Hoff's Cited Authority Is Unavailing

Hoff cited authority is also distinguishable and does not support his claim. For example, Hoff cites to *Bowles v. Quantum Chem. Co.*, 266 F.3d 622 (7th Cir. 2001). D.E. 30 at 13. In *Bowles*, the severance plan did not have a delegation clause, and, as a result, the court did not apply an arbitrary and capricious standard of review. *Id.* In addition, the plaintiff served as the director of polyolefins. *Id.* at 625-26. After an acquisition, the plaintiff suffered a number of changes to his job which included (1) inserting an additional layer of management between himself and the company president, (2) removing twenty people from his department, and (3) reducing his research budget and expenditure authorization. *Id.* at 627. The court found that these changes represented a meaningful diminution. *Id.* at 634. *Bowles* is distinguishable from the facts here. Notably, Hoff's claim is reviewed under an arbitrary and capricious standard. Moreover, Hoff did not experience a demotion in his reporting structure and did not have direct reports before or after the change of control. While the size and scope of his projects may have varied, that was the expectation for his position as a Project Manager.

Hoff's citation to *McClure v. Vice President, Human Res., Union Carbide Corp.* is equally unavailing for similar reasons. No. H030054, 2005 WL 1214645 (S.D. Tex. May 20, 2005). In *McClure*, the plan did not have a delegation clause providing discretionary authority to the plan administrator, and the court therefore did not apply the arbitrary and capricious standard. *Id.* at *10. For the plaintiff's duties, the company had hired another employee to replace his position. *Id.* at *1. The plaintiff was offered a transition opportunity that resulted in the following reductions: elimination of his supervisory authority over 25 staff and administrative personnel, elimination of his authority to manage a budget between $1.5 and $3 million, discontinuation of

his authority as a member of the plant management team, elimination of his responsibilities for labor relationships, discontinuation of his authority to shut down the plant, discontinuation of his responsibility for providing consulting to plant clients, and elimination of responsibility for assisting in planning the plant's staffing and human resources structure. *Id.* at \*17. Unlike the plaintiff in *McClure*, an arbitrary and capricious review applies to Hoff's claim. Hoff also did not experience a reduction in responsibilities similar to the plaintiff in *McClure*. Hoff did not have direct reports taken away because he was an individual contributor before and after the change of control. He was also not removed from any leadership teams nor did he lose any staffing authority.

Hoff's citation to *Daubertin v. HCR Manor Care, Inc.* also does not support his claim. 373 F.3d 822, 824 (7th Cir. 2004). In *Daubertin*, the plaintiff worked as a vice president of operations. After a merger, her position changed. *Id.* While she previously oversaw operations of both the Western and Central Divisions, the company removed her responsibility for the Central Division, which reduced her oversight from over 48 facilities to 27, from 34 skilled nursing units to 17, from 4,639 beds to 2,309, and a decrease in her budgeted revenue from $232 to $114 million. *Id.* The court found that these changes materially reduced the scope of the plaintiff's duties and responsibilities. *Id.* at 827, 832. *Daubertin* is distinguishable. Hoff did not lose an entire division of operations. Nor did Hoff supervise any employees, and the budget he was responsible for would change from project-to-project.

In sum, Hoff cites to sparse authority, and the authority he does cite is inapplicable.

### 2.     A Benefit Award Is Not Warranted

The Committee's determination was supported by substantial evidence and made on a reasoned basis. To the extent the Court determines that the administrative record does not include important evidence relied upon by the Committee, a remand to the Committee is the appropriate

remedy.  *See Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1289 (10th Cir. 2002) ("The remedy . . . is to remand the case to the administrator for further findings or explanation.")

3.      **Hoff's Breach of Fiduciary Duty Claim is Duplicative and Meritless**

Last, Hoff's breach of fiduciary claim is duplicative of his claim for alleged improper denial of benefits.  D.E. 30 at 22-23.  The cases Hoff relies upon are not breach of fiduciary duty cases.  *See Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 546 (11th Cir. 2000) (considering whether a decision was arbitrary and capricious).  Importantly, courts in the Tenth Circuit have found that when a breach of fiduciary duty claim is alleged for non-payment of benefits, the claim is duplicative and dismissal is appropriate.  *See Williams v. Metro. Life Ins. Co.*, No. 07-CV-2062-REB-CBS, 2011 WL 97137, at *10 (D. Colo. Jan. 11, 2011), *aff'd*, 459 F. Appx. 719 (10th Cir. 2012) (granting summary judgment to the defendant after finding that her breach of fiduciary duty claim was duplicative of her denial of benefits claim); *see also Walden v. Metro. Life Ins. Co. of Am., Inc.*, 75 F. Supp. 3d 1320, 1325 (D. Colo. 2014) (same); *Ihde v. United of Omaha Life Ins. Co.*, No. 17-CV-00847-RM-NYW, 2017 WL 5444551, at *4 (D. Colo. Nov. 14, 2017) (same).  Therefore, for the reasons stated above, the Committee's decision was not arbitrary and capricious; as a result, for the same reasons, Hoff's breach of fiduciary duty claim fails as well.

## VIII.   <u>CONCLUSION</u>

For the above-stated reasons, Defendants Amended and Restated Anadarko Petroleum Corporation Change of Control Severance Plan and Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee respectfully request that the Court grant Defendants' Motion for Summary Judgment, deny Plaintiff David Hoff's Motion for Summary Judgment, enter judgment in favor of Defendants, and affirm the decision of the Committee.  Defendants further request all other and further relief, at law or in equity, to which they may show themselves to be justly entitled.

Dated: September 16, 2022        Respectfully submitted,

/s/ *Shauna Johnson Clark*

Shauna Johnson Clark
Texas State Bar No.  00790977
shauna.clark@nortonrosefulbright.com

Kimberly F. Cheeseman
Texas State Bar No.  24082809
kimberly.cheeseman@nortonrosefulbright.com

Andrew Yeh
Texas State Bar No. 24098645
andrew.yeh@nortonrosefulbright.com

Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:     (713) 651-5151
Facsimile:      (713) 651-5246

*Attorneys for Defendants*

<u>CERTIFICATE OF SERVICE</u>

This pleading was served on the following opposing counsel via the Court's CM/ECF service in compliance with Rule 5 of the Federal Rules of Civil Procedure on September 16, 2022.

**<u>Counsel for Plaintiff:</u>**
Leah P. VanLandschoot, #35723
Amy M. Maestas, #46925
THE LITIGATION BOUTIQUE LLC
1720 S. Bellaire Street, Suite 520
Denver, Colorado 80222
T: 303.355.1942
F: 303.355.2199
lvanlandschoot@thelitbot.com
amaestas@thelitbot.com

        */s/ Andrew Yeh*      
Andrew Yeh
