# Exhibit A

United States District Court
Southern District of Texas
**ENTERED**
August 15, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| PING LU, §<br><br>§<br><br>§<br>Plaintiff, §<br>v. §<br><br>§<br>ANADARKO PETROLEUM §<br>CORPORATION WELFARE BENEFITS §<br>ADMINISTRATIVE COMMITTEE and §<br>ANADARKO PETROLEUM §<br>CORPORATION CHANGE OF §<br>CONTROL SEVERANCE PLAN, §<br><br>§<br>Defendants. § | CIVIL ACTION NO. H-22-709 |

## MEMORANDUM AND ORDER

Ping Lu began working as a data scientist at Anadarko Petroleum Corporation in 2017. AR.374.[1]  On August 8, 2019, Occidental Petroleum Corporation acquired Anadarko.  AR.375; AR.398.  The acquisition meant that Anadarko's Change of Control Severance Plan went into effect. AR.398.  The Plan gave employees a 90-day window to resign for "good reason" as defined under the plan and receive severance benefits.  AR.398.  Plan administration was handled by the Anadarko Petroleum Corporation Welfare Benefits Administrative Committee, which created a good-reason inquiry form "to allow Participants to inquire as to whether they have incurred a Good Reason event without having first resigned employment."  AR.398.

On November 1, 2019, Lu both submitted the good-reason inquiry form to the Committee and resigned.  AR.398–400.  Lu claimed good reason on the basis that his duties were materially and adversely diminished after the acquisition.  AR.399.  Lu obtained counsel and filed a formal

---

[1] Citations to the administrative record in this opinion will follow the format "AR.X," where "X" represents the page number using the bates labeled pagination from the record.  The record is available at (Docket Entry No. 24).

claim in December 2019.  AR.1–16.  The Committee denied the claim in March 2020.  AR.540–

45.  Lu appealed benefits denial in December 2020, AR.374–90, and the Committee denied the

appeal in April 2021, AR.549–60.

Lu then sued the Plan and the Committee under the Employee Retirement Income Security

Act ("ERISA").  Lu has moved for judgment under Rule 52 of the Federal Rules of Civil

Procedure.  (Docket Entry No. 25).  The defendants have moved for summary judgment under

Rule 56.  (Docket Entry Nos. 25).

Having reviewed the briefs, the administrative record, and the applicable caselaw,

summary judgment is granted in favor of the defendants.  The defendants' motion for summary

judgment, (Docket Entry No. 25), is granted.  Lu's motion for judgment, (Docket Entry No. 23),

is denied.  The reasons are explained below.

## I.      Factual Background

This ERISA plan dispute is presented on the administrative record.  Lu worked as a data

scientist at Anadarko starting in 2017.  He eventually became the manager of the Advanced

Analytics Research and Development subgroup of the data science group in Anadarko's Advanced

Analytics and Emerging Technology Department.  In that capacity, Lu was responsible for leading

research and development and working on deep learning and machine learning frameworks to

identify geologic features.  AR.19; AR.75.  Lu was also responsible for "keep[ing] up with

academic and industry research and "[g]enera[ing] content for external publications and

presentations in conference and scientific journals."  AR.19.

On August 8, 2019, the Occidental Petroleum Corporation acquired Anadarko.  This

acquisition triggered the application of the Change of Control Plan that the Anadarko Board of

Directors had enacted "to provide severance compensation for its eligible employees whose employment terminates following a Change of Control." AR.302.

Article IV of the Plan lays out the circumstances in which an employee is entitled to separation benefits:

4.1 Right to Separation Benefits.   A Participant shall be entitled to receive Separation Benefits as provided in Section 4.3 if a Change of Control occurs and his or her Employment terminates under a circumstance specified in Section 4.2(a). . . .

4.2 Termination of Employment.

(a) Terminations Which Give Rise to Separation Benefits Under This Plan.

(i) A termination without Cause during the Applicable Period;

(ii) A termination for Good Reason during the Applicable Period; provided, that, the Participant terminates his or her Employment within ninety (90) days of such occurrence . . . .

AR.309.

The Plan Administrator is the Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee.   AR.308; AR.318; AR.344.   Article IX lays out the Committee's duties and the standard of review for its actions.   AR.318–20, *amended in part*, AR.322–25, AR.328.  Section 9.1 confers the Committee's power and responsibilities:

9.1   Administration.   For the purposes of the Plan and ERISA, the "plan administrator" and named fiduciary of the Plan is the Plan Administrator.  The Plan Administrator shall establish such rules and procedures as may be necessary to enable it to discharge its duties hereunder.  The Plan Administrator shall have all powers necessary or proper to administer the Plan and to discharge its duties hereunder. . . . The Plan Administrator will also be authorized to engage or employ agents, attorneys, accountants, consultants, and other advisors which it deems to be necessary or appropriate to assist in discharging its duties hereunder. . . .

AR.318.

Section 9.3 sets out the procedure for reviewing claims.  AR.322–25.  The Committee must

provide written notice to the claimant if his or her claim is denied within 90 days of the

Committee's receipt of the claim.  AR.322.  A denial must set forth specific reasons the claim is

denied.  AR.322.  A claimant can appeal the denial, which the Committee must review.  AR.322–

24.

The Plan gives the Committee significant discretion, extending to both the interpretation

of the Plan and fact-finding associated with a particular claim:

> (g) Effect of Committee Action.   The Plan shall be interpreted by the Committee
> in accordance with the terms of the Plan and their intended meanings.  However,
> the Committee shall have the discretion to make *any* findings of fact needed in the
> administration of the Plan, and shall have the discretion to interpret or construe
> ambiguous, unclear or implied (but omitted) terms *in any fashion* the Committee
> deems to be appropriate in its *sole judgment*.  The validity of any such finding[s]
> of fact, interpretation[s], construction[s] or decision[s] *shall not be given de novo
> review if challenged in court*, by arbitration or in any other forum, and shall be
> upheld unless *clearly arbitrary or capricious*. . . .  If, due to errors in drafting, *any*
> Plan provision does not accurately reflect its intended meaning, as demonstrated by
> consistent interpretations or other evidence of intent, or as determined by the
> Committee in it[s] *sole and exclusive judgment*, the provision shall be considered
> ambiguous and shall be interpreted by the Committee in a fashion consistent with
> its intent, as determined by the Committee in its *sole discretion*.  The Committee,
> without the need for approval by the Board, may amend the Plan retroactively to
> cure any such ambiguity. . . . *All actions* taken and *all determinations* made in good
> faith by the Committee *shall be final and binding* upon all persons claiming any
> interest in or under the Plan.

AR.324–25 (emphasis added).  Consistent with its Article IX obligations to interpret the Plan, the

Committee issued a document approximately a month after Occidental acquired Anadarko.  This

document interpreted the term "Good Reason" under the Plan.  AR.761–64.

"Good Reason" is defined in the Plan to mean, in relevant part, that "the Participant's duties

and responsibilities as an Employee are materially and adversely diminished in comparison to the

duties and responsibilities enjoyed by the Participant immediately prior to the Change of Control."

4

AR.307.  The document issued by the Committee explained that a material and adverse diminishment in duties and responsibilities requires that the change in duties be permanent, not a short-term reduction, adverse, and material.  AR.761.  The document included the following explanations and examples:

- The change must be a reduction in duties and responsibilities ("duties"). An increase in job duties does not qualify.

- The change must be adverse. A positive change does not qualify.

  o Example: An employee has long complained of being overworked and certain duties are removed to assist the employee. This is not an adverse change.

- The change to duties must be permanent. A short-term reduction in duties due to lack of work, transition, reorganization, or similar matters does not qualify.

  o Example: During the integration of Oxy and Anadarko, work slows down while management reviews work processes. Because this is temporary, it does not qualify.

  o Example: A supervisor states that one or more job duties held by the employee has been taken away. This is a permanent change. . . .

AR.761–64.

Lu worked for Anadarko before and after it was acquired by Occidental.  Before the acquisition, Lu claims that he had significant responsibilities.  Specifically, Lu claims that:

[He] was responsible for research and development of deep learning models with Advanced Analytics & Emerging Technology Department and the Geophysical Research and Development group ("Geophysical R&D"). He had access to proprietary seismic data that was vital for this research. He was part of a team with Geophysical R&D, attending meetings, collaborating with them, and participating in their activities. He was given project assignments with wide discretion and broad scope to pursue his goals. He was free to publish his findings in publications and attend conferences to further his research. Finally, he was a critical part of the Data Science Internship Program, which helped funnel new knowledge and employees into Anadarko.

(Docket Entry No. 23 at 4–5).

Lu claims that, after the acquisition, his job responsibilities diminished.  Lu claims that the research and development budgets were "drastically reduced or eliminated."  (Docket Entry No. 23 at 2).  He claims that Occidental reduced its research investments from $7.5 million to $4.6 million, which froze geophysical research and development projects.  Lu claims that Occidental's decision to reduce the budget allocations affected his own work, which required collaboration with external technology organizations.  (Docket Entry No. 23 at 7–8).  As a result, Lu claims that his work with third parties was terminated and several projects in his particular area of deep-learning model development were ended.  (Docket Entry No. 23 at 10).  Lu characterized the "few projects he still received" as involving "little discretion and an extremely narrow scope."  (Docket Entry No. 23 at 2).

In addition, Lu claims that Occidental reduced the budget to license seismic data, which reduced or ended much of Lu's research and his ability to publish scientific papers.  Lu claims that he was not given the funding to attend conferences that he had been accustomed to attending at Anadarko.  Finally, Lu claims that the departure of his fellow geophysicists meant that Lu could no longer effectively collaborate and that Occidental did not have a plan to rebuild a team for collaborative work.  Taken together, Lu alleges that the effect of the changes Occidental imposed after its acquisition of Anadarko was to "demote[]" him "from Data Scientist to mathematician." (Docket Entry No. 23 at 8).

On November 1, 2019, Lu submitted an inquiry form to the Plan Administrator to inquire into whether he had incurred a "Good Reason" before resigning.  Lu alleges that Oxy took several actions that resulted in a diminishment of his job duties: (1) cancelling the internship program; (2) reducing the research and development budget; (3) reducing the function of seismic licensing;

not having geophysicists report to him; (4) eliminating data engineers; (5) not allowing Lu to attend professional events; and (6) asking Lu to perform mathematical duties outside his skillset.

Lu resigned the same day he submitted his inquiry form.  On December 12, 2019, Lu filed a formal claim for benefits.  AR.1–16.  On March 13, 2020, the Committee sent Lu a written denial.  AR.132–37.  The Committee concluded that Lu overstated the facts that he asserted in support of his claim.  For example, although Lu stated that his role in the internship program had been diminished, the Committee concluded that "it was never communicated to [Lu] that [his] role with the program would change."  AR.133.  The Committee also concluded that "the internship program was a very small part of [Lu's] overall responsibilities . . . [and] not a material part of [his] position or [his] role at Anadarko."  AR.133.

The Committee made similar factual findings with regard to the other bases Lu used for his claim.  The Committee concluded that Lu "did not experience a Good Reason event because [his] duties and responsibilities were not materially and adversely diminished in comparison to [his] duties and responsibilities immediately prior to the [Change of Control] and you voluntarily terminated employment before a Good Reason event occurred."  AR.135.  Accordingly, Lu was not entitled to severance benefits.

Lu filed an appeal, through counsel, in December 2020.  AR.374–90.  In April 2021, the Committee again, and on a fuller record, denied the claim.  AR.549–72.  The Committee again investigated each factual basis for Lu's claim and issued extensive findings of fact.  AR.561–72.  The Committee concluded that "Mr. Lu did not experience a Good Reason Event because (i) his duties and responsibilities were not materially and adversely diminished in comparison to his duties and responsibilities immediately prior to the [acquisition], and (ii) he voluntarily terminated employment before a Good Reason Event occurred."  AR.559.  As a result, the Committee found

that Lu was "not entitled to separation benefits" under the Plan.  AR.559.  This federal suit
followed.

## II.     Applicable Legal Standards

The parties dispute whether the pending motions should be treated as a motion for
judgment under Rule 52 of the Federal Rules of Civil Procedure or a motion for summary judgment
under Rule 56.  This issue is worth discussing because the caselaw is unclear and appears to vary
depending on the case.

Rule 52 provides that in a case "without a jury . . . the court must find the facts specially
and state its conclusions of law separately. The findings and conclusions may be stated on the
record after the close of the evidence or may appear in an opinion . . . .  Judgment must be entered
under Rule 58."  FED. R. CIV. P. 52(a)(1).  Rule 56 allows a party to move for summary judgment,
which "[t]he court shall grant . . . if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

The federal circuits have "take[n] diverging views on how ERISA denial-of-benefits cases
should be handled by the district courts."  *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951,
958 (4th Cir. 2022).  The Second and Seventh Circuits "have concluded that, although summary
judgment may be appropriate when there is no genuine issue as to any material fact, a bench trial
is appropriate when fact-finding is required."  *Id.* (citing *Casey v. Uddeholm Corp.*, 32 F.3d 1094,
1098–99 (7th Cir. 1994), and *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir.
1999)).  The First and Tenth Circuits have employed "a modified, quasi-summary-judgment
procedure."  *Id.*  (citing *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005),
and *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life
Ins. Plan*, 605 F.3d 789, 795–96 (10th Cir. 2010)).  The Sixth Circuit "has concluded that neither

summary judgment nor a bench trial is appropriate in ERISA denial-of-benefits cases and that an alternative form of review unique to ERISA cases is appropriate." *Id.* (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618–19 (6th Cir. 1998) (Gilman, J., concurring)).   In a relatively recent decision, the Fourth Circuit concluded that ERISA denial-of-benefits cases are properly resolved using Rule 52.   *Id.* at 961 ("At bottom, the ERISA-specific quasi-summary-judgment procedure is a solution in search of a problem. The Federal Rules of Civil Procedure already provide a mechanism for district courts to resolve disputed facts and render a judgment, and that mechanism was employed by the district court here: a Rule 52 bench trial.").

Neither the Fifth Circuit nor the Supreme Court has directly weighed in.   *See Katherine P. v. Humana Health Plan, Inc.*, 959 F.3d 206, 208 (5th Cir. 2020) (noting that "[t]here is an open question whether it is appropriate to resolve ERISA claims subject to de novo review on summary judgment, or whether the district court should conduct a bench trial," but declining to resolve the issue).

Nor is there a consistent rule within the Southern District of Texas.   *Compare Hodge v. Guardian Life Ins. Co. of Am.*, No. 4:20-CV-2088, 2021 WL 5142793, at *1 (S.D. Tex. Sept. 10, 2021) ("The Court concludes that the appropriate way to resolve this dispute is by making findings of fact and conclusions of law consistent with Rule 52 based on the administrative record and briefing."), *report and recommendation adopted*, No. 4:20-CV-2088, 2021 WL 5143886 (S.D. Tex. Nov. 3, 2021), *with*, *Talasek v. Unum Life Ins. Co. of Am.*, No. 4:18-CV-3306, 2020 WL 7775450, at *2 (S.D. Tex. Dec. 15, 2020) ("The parties have submitted this matter to the Court on motions for summary judgment, so the Court has considered the motions under the summary judgment standards of Rule 56."), *report and recommendation adopted*, No. 4:18-CV-3306, 2020 WL 7773899 (S.D. Tex. Dec. 30, 2020), *aff'd sub nom. Talasek v. Nat'l Oilwell Varco, L.P.*, 16

F.4th 164 (5th Cir. 2021) (affirmed with no discussion of the appropriate standard for resolving ERISA denial-of-benefits cases).

Without controlling law on which standard to apply, the court determines which procedural approach best suits this specific case. Based on the record, this case appears to be best resolved through summary judgment under Rule 56. There are two features of this case that make it particularly suited for summary judgment treatment.

First, the Plan itself extends broad discretion to the Committee and limits the court's review: "the Committee shall have the discretion to make *any* findings of fact needed in the administration of the Plan, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms *in any fashion* the Committee deems to be appropriate in its *sole judgment*." AR.324–25 (emphasis added). The Plan then prohibits a de novo review of the Committee's fact finding and its interpretation of the Plan. AR.324–25 ("The validity of any such finding[s] of fact, interpretation, construction or decision *shall not be given de novo review if challenged in court*, by arbitration or in any other forum, and shall be upheld unless *clearly arbitrary or capricious*." (emphasis added)). Because Rule 52 requires the court to issue findings of fact, and because Lu asks the court to issue findings contrary to those already issued by the Committee, Rule 52 is not an appropriate mechanism to resolve this ERISA dispute.

Second, based on the limited scope of the court's review and the nature of the disputed facts in this case, Rule 56 is more appropriate. There are factual disputes present on this record, but none material to determining whether the Committee acted arbitrarily and capriciously. For example, one disputed fact is whether Occidental cancelled the Data Science Internship Program. Lu argues that it was cancelled; the Committee found that it was not. That fact dispute might be material if the court was tasked with determining whether Lu in fact experienced a material and

adverse reduction in duties and responsibilities.  In that case, the dispute over whether the program

was cancelled would preclude summary judgment under Rule 56 and require a de novo review of

the administrative record and the issuance of findings of fact under Rule 52.  But the court is not

tasked with resolving whether, as a matter of fact, the internship program was cancelled or whether

that program was material to Lu's duties and responsibilities.  Instead, the court's review is limited

to determining whether the Committee's findings were "clearly arbitrary or capricious."  AR.324–

25.  That determination is not based on whether the court would have reached the same conclusion

on the same record.  There is no dispute of material fact as to the record the Committee had before

it.  This case is properly resolved under Rule 56, not Rule 52.

"Summary judgment is appropriate where 'the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th

Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the

suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021)

(quoting reference omitted).  The moving party "always bears the initial responsibility of

informing the district court of the basis for its motion[] and identifying" the record evidence

"which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp.

v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the [nonmovant] bears the burden of proof at trial,' a party moving for summary

judgment 'may merely point to the absence of evidence and thereby shift to the [nonmovant] the

burden of demonstrating by competent summary judgment proof that there is [a dispute] of

material fact warranting trial."  *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)

(quoting reference omitted).   "However[,] the movant 'need not negate the elements of the nonmovant's case.'"   *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).   "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion."   *Sanchez v.  Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.  242, 250–51 (1986)).

After the movant meets the Rule 56(c) burden, "the [nonmovant] must come forward with 'specific facts' showing a genuine factual issue for trial."   *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted).   The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case.   *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted).   All reasonable inferences are drawn in the nonmovant's favor, *Loftin v.  City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022), but a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'"   *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### III.    Analysis

In an ERISA case, the plan administrator's benefit determinations can be divided into two categories: interpreting the plan terms and determining the facts underlying the benefit claim.   The Plan confers discretion to the Committee on both categories.   AR.324–25 ("[T]he Committee shall have the discretion to make any findings of fact needed in the administration of the Plan, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion the Committee deems to be appropriate in its sole judgment.").

Lu and the defendants agree that the court must review the Committee's interpretation of the Plan, factual findings, and ultimate determination that Lu is not entitled to benefits for an abuse of discretion.  (Docket Entry No. 23 at 6–7); (Docket Entry No. 28 at 20).  "Abuse of discretion review is synonymous with arbitrary and capricious review in the ERISA context."  *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009).  Applying this standard, the Committee's decision must be affirmed "if it is supported by substantial evidence," meaning that the evidence is "more than a scintilla, [but] less than a preponderance," and "reasonable mind[s] might accept [the evidence] as adequate to support a conclusion."  *Id.* (quoting references omitted).  "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence."  *Id.*

Lu argues that the Committee did not interpret the Plan in a legally correct manner and abused its discretion in determining the facts.  (Docket Entry No. 23 at 27–28).  Lu's Plan interpretation argument is that the Committee did not give the Plan a uniform construction. (Docket Entry No. 23 at 27–28); *see Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001) ("In answering . . . whether the administrator's interpretation of the plan was legally correct, a court must consider: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.").  Lu's factual argument is that there was no unfirm construction, (Docket Entry No. 23 at 25–26), Lu's allegation that his job duties were in fact materially and substantially reduced, (Docket Entry No. 23 at 10–23), and Lu's allegation that the Committee failed to fully and fairly review his claim, (Docket Entry No. 23 at 23–28). Each argument is addressed below.

### (1) Uniform Construction

Lu argues that the Committee "did not give the plan a uniform construction" because it "granted the severance claim of every other employee in the AAET Data Science subgroup while denying Mr. Lu's claim." (Docket Entry No. 23 at 27). Lu cites the Committee's approval of claims filed by Natalie Berestovsky, Alex Bayeh, and Ding Zhou Cao. (Docket Entry No. 23 at 25).

Lu raised this same argument to the Committee in his appeal. *See* AR.556–57. In denying the claim, the Committee explained that, under the Plan, "good reason" requires assessing whether the *claimant's* "duties and responsibilities were materially and adversely diminished in comparison to duties and responsibilities in effect immediately prior to the" acquisition. AR.557. The Committee explained that "[t]he test is not whether the duties of *different* people were diminished or not." AR.557 (emphasis added). The Committee found that each individual Lu held up as comparable had different job duties and responsibilities than Lu before and after the acquisition. AR.557 ("The Committee reviewed the situations for each of the individuals mentioned in the Appeal and concluded that each situation was unique and different and Mr. Lu's situation was not the same.").

The Committee's factual findings are entitled to deference, and nothing in the administrative record indicates that the Committee abused its discretion in finding Berestovsky, Bayeh, and Cao's circumstances different than Lu's circumstances. The administrative record shows that Beretstovsky and Cao job positions had been eliminated. AR.830. The record also shows that Bayeh was in a job that reported to Lu, making his circumstances dissimilar. AR.830.

Lu relies on evidence outside the administrative record. (Docket Entry No. 26-1). The parties dispute whether this evidence is properly before the court. "Once the administrative record

14

has been determined, the district court may not stray from it but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim." *Est. of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000).

The court did review this additional evidence because it relates to how the Committee interpreted the terms of the Plan, but this additional evidence does not help. The record does not show that the Committee abused its discretion in determining that Berestovsky, Bayeh, and Cao experienced a material and adverse diminishment in their duties and responsibilities. As to Bayeh, the evidence outside the administrative record showed that Bayeh was specifically told in a meeting with HR director that there was "no position for [Bayeh] in the new organization." (Docket Entry No. 26-1 at 25). There is no allegation that any similar statement was made to Lu.

The Plan confers discretion on the Committee. AR.293–94. The record evidence does not show an abuse of that discretion or that the administrator's interpretation was legally correct.

### (2) Procedural Fairness

Lu next argues that the Committee failed to fully and fairly review his claim. Specifically, Lu argues that the Committee: (1) "blindly" relied on the statements of three "biased" employees— David Bowlby, Reza Rastegar, and Klaas Koster; (2) improperly delegated the claims decision to an outside lawyer; and (3) relied on "unsubstantiated" information about Lu's future job duties. (Docket Entry No. 23 at 23–26).

The record does not support an abuse of discretion based on a lack of procedural fairness. Instead, the record shows that the Committee gave Lu a full and fair hearing. The Committee initially met in February 2020 to consider Lu's claim. AR.816. The Committee reviewed the

documents that Lu and his counsel submitted, which included email communications from Jeremy Graybill, the Director of Data Science & Advanced Analytics. AR.119–31. The Committee also interviewed three individuals within Lu's group: Rastegar, who was the Director of Data Management and Analytics and Lu's supervisor; Bowlby, who was the Vice President of Data Management and Analytics and Lu's second-level supervisor; and Koster, who was the group's Chief Geophysicist.

The information the Committee learned in the February 2020 meeting included that: Lu's position would continue and expand at Occidental; Lu's complaint of the loss of an internship program was not based on any direction from Occidental and, in any event, had been a small and immaterial part of his work at Anadarko; Lu had been asked to work on R&D projects but had not responded; Lu would continue to have an opportunity to conduct research from seismic data at Occidental; and Lu's inability to attend conferences was temporary. On those findings, the Committee denied Lu's claim.

The Committee again fully and fairly heard Lu's claim on appeal, even though Lu did not timely submit the appeal. *See* AR.549 n.1. During the appeal process, a second committee meeting occurred. The Committee reviewed all the issues Lu had raised. Again, the Committee denied his claim.

Lu's submissions to the Committee were extensive. His initial counseled included a 16-page brief, AR.1–16, and 17 exhibits, spanning 114 pages, AR.17–131. In preparation for his appeal, Lu requested several documents, including Plan-related documents, email correspondence, and documents presented to the Committee during its decision process. AR.301. Those documents were promptly provided. AR.302–71. His appellate submissions included a 17-page brief, AR.374–90, and 5 exhibits, spanning 157 pages, AR.391–548.

The record shows that the Committee thoroughly considered Lu's claims, reviewing all the materials provided, and actively conducting interviews during the first review and then second-round interviews on appeal. In denying Lu's claim initially, the Committee issued a 6-page letter explaining the denial. AR.132–38. In denying Lu's claim on appeal, the Committee issued a 24-page letter explaining the denial. AR.549–72. The Committee went to great lengths to explain its reasoning. For example, Lu's appellate brief included a chart that specifically laid out each statement made by the Committee in its denial letter and why Lu believed that statement was misguided. AR.377–86. The Committee created its own version of that chart with responses to each of Lu's arguments. AR.561–72.

The record shows that the Committee did act in a procedurally fair manner. Nevertheless, Lu argues that the Committee acted unfairly by taking into account the testimony of Bowlby, Rastegar, and Koster, hiring an outside lawyer, and considering evidence about his future job duties. (Docket Entry No. 23 at 23–26). The record shows no basis for Lu's claims of bias. The Committee did not abuse its discretion in consulting with outside counsel or in considering evidence that did not support Lu's claim.

### (3) Merits

Lu's sets out 6 ways in which Lu believes his job was materially and adversely affected: (1) the internship program was allegedly cancelled; (2) the budget was decreased; (3) Occidental did not own assets that included seismic licensing; (4) Lu did not have geophysicists that reported to him; (5) Lu had to do data engineering work because the data engineer on his team was moved to another team; and (6) Lu's opportunities to go to professional events and work on publications were diminished. The court finds that the Committee did not abuse its discretion in concluding that Lu's merit-based arguments lacked factual support.

"Assuming that both parties were given an opportunity to present facts to the administrator, [the court's] review of factual determinations is confined to the record available to the administrator." *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). The Committee addressed each of Lu's claims and found, as a factual matter, that his statements were largely inaccurate, and that his post-acquisition duties and responsibilities were not materially and adversely diminished other than on a temporary basis.

As to the internship program, the Committee determined hat the program had not been cancelled, and, in any event, had not been a material part of Lu's duties at Anadarko. AR.550–51.

On the budget, the Committee determined that even with the budget decrease, Lu himself still had a significant amount of work, meaning he had not been adversely affected. AR.551–53. The Committee addressed Lu's allegations that the R&D budget cuts precluded his ability to develop deep-learning models, the focus of his work at Anadarko. The Committee found that Lu did have ongoing R&D projects despite the budget reductions, and that efforts had and would be made to get Lu to work on several of these projects.

On seismic licensing, the Committee found that Occidental continued to own certain assets and that Lu could obtain information from those assets. AR.553. The Committee addressed the impact of the reduction on the ability to conduct research from seismic data. The Committee explained that despite the sale of seismic data, Occidental continued to offer Lu opportunities, emphasizing that as Manager of Data Science & Advanced Analytics, Lu's role was to perform research and analysis for whatever assets Anadarko or Occidental owned.

On the lack of geophysicists, the Committee determined that although there had been reductions in the number of geophysicists after the change in control, Lu had never had a geophysicist as a direct report at Anadarko, and because Occidental would make senior

geophysicists available to work with Lu, the lower number of geophysicists was not an adverse change in Lu's employment.  AR.553–54.

On the movement of the data engineer, the Committee determined that this change was temporary.  AR.554.  The Committee determined that temporary changes in Lu's duties would not be a "Good Reason" event under the Plan.  The Committee explained to Lu that one data engineer who had transferred out of his group remained available to work with Lu, and that Lu's team would continue to grow.  The Committee also found that Lu had been asked to do certain data engineer work because it aligned with his expertise, not as a demotion.

On events and publications, the Committee found that Lu could not attend one event because of a work conflict (he had not completed his work), not because of an Occidental policy.  AR.554–55.  The Committee further found that Lu was informed he would continue to have opportunities to attend events and publish articles in the future.  AR.554–55.  The Committee confirmed that Lu could attend professional conferences and issue publications, as long as he had timely completed work obligations at Occidental.

Lu was given a full hearing by the Committee.  He fails to point to evidence that raises factual disputes material to determining that Oxy acted within its discretion in denying Lu severance benefits.   The record shows that the Committee correctly and consistently interpreted the Plan; gave Lu a full and fair hearing, on two separate occasions, with an ample set of documents submitted by both Lu and Occidental. The Committee determined that Lu had continued to have work at Oxy within his responsibilities and skills after the Anadarko acquisition.

At bottom, the record shows that Lu simply disliked that his work environment had changed, not that he was negatively impacted.  As the Committee explained, "[t]he fact that [Lu] preferred to perform one project  over another does not mean that there was a material and  adverse

diminishment of [his] duties and responsibilities.   [Lu] worked on many different projects in the organization   as they were prioritized by the organization.   Changing projects does not change [Lu's] duties and responsibilities.   Thus, reducing the assets of the organization does not correlate with fewer research and development opportunities." AR.133–34.

The Committee found that there was ample work within the scope of Lu's responsibilities and skills, and that the reorganization plan would increase his work beyond what it had been at Anadarko.  The Committee noted that even if there were temporary changes limiting his work and responsibilities, a temporary change would not be a "Good Reason" event under the Plan.  Again, the Committee determined that Lu had refused to perform some work he had been asked to do.

There is no basis in this record for the court to conclude that the Committee abused its discretion.

### IV.  Conclusion

Lu's motion for judgment on the administrative record, (Docket Entry No. 23), is denied. The defendants' motion for summary judgment, Docket Entry No. 25), is granted.

SIGNED on August 15, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge